**STATE of Maine**

v.

**Gilbert COLLIN.**

Supreme Judicial Court of Maine.

Argued Jan. 19, 1982.

Decided Feb. 23, 1982.

---

Gene Libby, Deputy Dist. Atty., David M. Spencer, Legal Intern (orally), Alfred, for plaintiff.

Eric Cote (orally), Saco, for defendant.

Before McKUSICK, C. J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

ROBERTS, Justice.

Gilbert Collin appeals his conviction for operating a motor vehicle while under the influence of intoxicating liquor, 29 M.R.S.A. § 1312, following a jury trial in Superior Court, York County. Collin assigns as error the exclusion of certain defense expert testimony, the failure to voir dire the jury as to any possible relationships with a rebuttal witness called by the State, certain misstatements made by the prosecutor, and an attempt by the prosecutor to admit hearsay testimony. We affirm the judgment of the Superior Court.

## I. FACTS

On June 20, 1980, at approximately 1:00 a. m., Officers Marcel Ducette and John

Moran of the Biddeford Police Department observed Collin at the corner of Pool and Alfred Streets in Biddeford. The officers stopped and Ducette spoke to Collin in French. Ducette testified at trial that "I observed right away that he [Collin] was using his hands a lot and usually—I know this man by sight, usually he walks straight and he was slumped over and I smelled alcoholic beverages." As a result of his observations Officer Ducette told Collin that he had too much to drink and that he should not drive his truck, a large lumber truck parked in the immediate vicinity.

The officers left and shortly thereafter saw Collin, grinding his gears, drive up Alfred Street for $\frac{2}{10}$'s of a mile. While driving up Alfred Street Collin drove approximately three-quarters of his truck over the "imaginary" center line (Alfred Street does not have a center line), jerked the truck back into the right hand lane, then drifted again into the left part of the street, whereupon the police stopped him. Officer Moran approached Collin and observed that he "had glassy—red, glassy eyes and ... alcohol on his breath." Moran asked the defendant to perform a field sobriety test and observed Collin "drift off to one side and have to take a step or two to recover." Moran also testified that Collin fumbled with his wallet while trying to find his license and registration. Moran placed Collin under arrest and the officers took him to the Biddeford Police Department where he was given an intoxilyzer test which resulted in a reading of .22%. Moran testified that in his opinion Collin "was under the influence of intoxicating liquor."

## II. EXCLUSION OF DEFENSE EXPERT TESTIMONY

■ At trial Collin called Patrick Demers as an expert witness. During questioning on direct examination defense counsel asked his witness "[i]f you knew that Mr. Collin drank seven 12-ounce beers between 7:30 and 1:00 a. m. in the morning are you able to say approximately what his blood alcohol test would be around 1:45 in the morning?"[1] The court sustained the State's objection to the question. Collin argues the exclusion of this testimony was error. We do not agree. M.R.Evid. 401 provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In the absence of evidence in the record or even a representation by defense counsel that later evidence would show that the defendant had, in fact, consumed seven twelve-ounce beers between 7:30 p. m. and 1:00 a. m., the answer sought by defense counsel was properly excluded as irrelevant to the issue of whether the defendant was guilty as charged.

■ Shortly thereafter, defense counsel asked Mr. Demers "[c]an you say how many 12-ounce beers an average person would have to drink in that same given time period between 7:30 and 1:00 to achieve a test result of .22 around 1:45 in the morning?" The court sustained the State's objection to that question. Defense counsel made an offer of proof that Mr. Demers would testify that "Mr. Collin would have had 20 beers." Collin argues that exclusion of this testimony was error and that he should have been allowed to have the jury consider how much he would have had to drink to reach the blood alcohol level the intoxilyzer indicated that he reached, thereby calling into question the validity of the intoxilyzer test result. M.R.Evid. 403 provides *inter alia* that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ...." We think that the absence of evidence or an offer of proof which would tend to link this defendant with the "average person" greatly diminished the probative value of the evidence sought by defense counsel. A threshold inquiry regarding admissibility of

---

1. The evidence at trial suggested that the defendant had been drinking at a local night spot from approximately 7:30 p. m. until 1:00 a. m.

expert testimony under Rule 702 is whether such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." M.R.Evid. 702. Because the defendant failed to show that the testimony was applicable to the defendant and would, therefore, assist the jury to determine a fact in issue, thus significantly diminishing the probative value of the testimony, the trial justice properly excluded the testimony on the grounds of confusion, misleading the jury, undue delay and waste of time. M.R.Evid. 403. *See McCormick on Evidence*, § 203 at 491 (2 ed. 1972) (probative value of expert testimony may be overborne by familiar dangers of misleading the jury and undue consumption of time).

## III. PROPRIETY OF STATE'S REBUTTAL WITNESS TESTIMONY

The second issue the defendant raises relates to the testimony of Thomas Reardon of the Maine State Police, called as a rebuttal witness by the State. Reardon's name had not been included on the list of prospective witnesses when the jury was voir dired. The defendant claims he was prejudiced by this omission.

 The constitutional guarantee of an impartial trial encompasses the right to be tried by an impartial jury. *State v. Thibeault,* Me., 390 A.2d 1095, 1098–1100 (1978); *Christian v. State,* Me., 268 A.2d 620, 623–24 (1970); Me.Const. art. I, § 6, U.S.Const. amend. VI & XIV. To accomplish this end our criminal rules provide for the pretrial examination of potential jurors "which is germane to the jurors' qualifications," M.R.Crim.P. 24(a), in order that bias or prejudice will not be present in the jury array. The orderly administration of justice places an obligation upon counsel to reveal to the court the names of *all* potential witnesses before the voir dire of the jury in order to ensure the selection of an impartial jury. We realize, of course, that counsel may find it necessary in the course of a trial to call a witness in rebuttal who they previously did not anticipate would testify. In such cases failure to advise the court of the name of a witness prior to voir dire of the jury panel may be unavoidable. The obligation to identify potential witnesses is not relieved, however, by simply labeling the testimony of a known witness as "rebuttal" testimony.

 Although the State was here obliged to advise the Court of the witness' identity prior to trial, we find that Collin expressly waived any error that may have resulted from the State's failure in this regard. The record reveals that defense counsel was aware immediately subsequent to jury selection that the State planned to call Reardon. Counsel did not, however, request that the court inquire of the jury at that time.[2] Moreover, defense counsel later specifically waived any objection to the fact that Reardon had not been identified to the jury as a witness.[3] Finally, Collin has made no showing that the State's failure prejudiced him in any manner. Given these circumstances, we find no reversible error.

## IV. PROSECUTORIAL MISCONDUCT

Collin's final arguments address certain misstatements made by the prosecutor and an attempt by the prosecutor to elicit hearsay testimony from one of his witnesses. The prosecutor sought to impeach Demers by asking Demers if he disagreed with a legal treatise, R. Erwin, *Defense of Drunk Driving Cases* (3d ed. 1980), when it states that (1) weekly calibration of intoxilyzer test machines is sufficient to yield accurate results and (2) that the administration of an intoxilyzer test according to the seven procedures listed on an intoxilyzer test sheet is sufficient to yield accurate results. Defense counsel's objection to the first question was overruled. Defense counsel did

---

2. Whenever the trial court becomes aware of an additional witness, it should inquire of the jurors in order to ensure their impartiality and to avoid the potential for a mistrial.

3. After the court reminded defense counsel that Reardon's name had not been on the list of potential witnesses provided by the State, defense counsel informed the court "he wasn't voir dired, *but that is all right.*" (Emphasis added.)

not object to the second question. Later in the trial the prosecutor attempted to have a State witness testify to the substance of a decision rendered by the highest court of California. The Court sustained defense counsel's objection to this line of questioning.

The State concedes on appeal that the prosecutor misstated the contents of Erwin's treatise and further admits that the attempt to inform the jury of a California decision was wrong. There is no doubt that the prosecutor's misstatement of Erwin's treatise and his attempt to introduce clearly inadmissible testimony were improper. *See State v. Gaudette*, Me., 431 A.2d 31, 34 (1981); M. Bar R. 3.7(e)(2)(i).

We are compelled, once again, to remind prosecutors of Justice Sutherland's oft-quoted and regrettably oft-ignored teachings in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), that while a prosecutor "may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Id.* at 88, 55 S.Ct. at 633, 79 L.Ed. at 1321, *see Gaudette*, 431 A.2d at 34; *State v. Wyman*, Me., 270 A.2d 460, 463. As a representative of an *impartial* sovereign the prosecutor's duty to ensure that a criminal defendant receives a fair trial must far outweigh any desires which may exist to achieve a successful track record of convictions. The line between proper and improper behavior "can only be located through a sense of fitness and taste and an appreciation of the prosecutor's proper role. Those who cannot discern that line with confidence had best stay a safe distance away from it." *United States v. Spain*, 536 F.2d 170, 175–76 (7th Cir. 1976) (citations omitted).

Although we find the prosecutor's action improper in the context of this case we cannot say that his conduct was sufficiently prejudicial to set aside the conviction. In addition to the intoxilyzer test result, which the prosecutor sought to support, the jury heard the testimony of two police officers. The first officer formed an opinion as to Collin's sobriety *before* his arrest and advised Collin not to drive that evening. The second officer testified that in his opinion Collin was under the influence of intoxicating liquor. Moreover, the jury could properly consider the physical appearance and the actions of the defendant on the night in question and the manner he operated the vehicle he was driving. In addition, defense counsel at no time asked the court for either a limiting or curative instruction nor moved the court for a mistrial. Accordingly, although we do not condone the prosecutor's conduct, we affirm the conviction.

The entry is:

Judgment affirmed.

All concurring.