**STATE of Maine**

v.

**Kevin MYLON.**

Supreme Judicial Court of Maine.

Argued June 16, 1983.

Decided July 25, 1983.

Janet T. Mills, Dist. Atty., Kevin J. Regan, Asst. Dist. Atty., (orally), Auburn, for plaintiff.

Berman, Simmons, Laskoff & Goldberg, P.A., Julian L. Sweet (orally), Lewiston, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS and WATHEN, JJ.

McKUSICK, Chief Justice.

In a jury trial in Superior Court (Androscoggin County), defendant Kevin Mylon was found guilty of vehicular manslaughter. *See* 17–A M.R.S.A. § 203(3) (1983). On appeal he contends that the presiding justice erred 1) in permitting the State to present certain expert testimony as rebuttal and 2) in refusing to give a requested instruction as to the standard of care applicable to a person confronted with an emergency. We affirm the conviction.

### I. *Factual Background*

Mylon's manslaughter conviction resulted from an automobile collision that occurred at about 12:45 a.m. on the morning of Saturday, March 28, 1981, in the northbound lane of Route 4 in Livermore. The van that Mylon was driving ran into the rear of a stopped car carrying five teenage passengers, three of whom died from injuries sustained in the collision. The car hit by the Mylon vehicle had been driven by William Crockett. When struck by the Mylon van, the Crockett car was stopped, partially on and partially off the paved surface, on a short straightaway at the bottom of a hill.

### II. *Admissibility of Expert Rebuttal Testimony*

In its case-in-chief, the State introduced the results of a blood alcohol test performed on Mylon at about 2:30 a.m., nearly two hours after the collision. It showed .18 percent alcohol by weight. Mylon maintained at trial that he had drunk only four or five twelve-ounce beers between 3:30

and 6:00 p.m. on the day before (March 27) and that he had not drunk any alcoholic beverages after 6:00 p.m. that evening.

Following Mylon's testimony, the State was permitted, over objection, to offer rebuttal testimony from an expert witness, Patrick Demers. Demers testified to his expert opinion that if an individual of Mylon's height and weight consumed the amount of alcohol claimed by Mylon, in the time period claimed by Mylon, his blood alcohol content would have been zero by 9:30 that evening. Demers further testified that for an individual of Mylon's weight to register a blood alcohol content of .18 percent at 2:30 a.m., the amount of alcohol consumed would equal at least fourteen twelve-ounce beers if drunk between 3:50 p.m. and 12:45 a.m. On appeal Mylon argues that the Demers testimony should not have been admitted because the prosecutor failed to disclose it in response to defendant's M.R.Crim.P. 16 discovery request, and because it went beyond the proper scope of rebuttal testimony.

A. *Discovery violation*

At trial the State sought to present, as part of its case-in-chief, the testimony of a pathologist, Dr. Ronald Roy, concerning the degree of physical impairment of reaction time to be expected in a person with a .18 percent blood alcohol level. At the outset of the trial the prosecutor had informed the court that he intended to elicit similar testimony from Demers on rebuttal. On the second day of trial defense counsel moved for a ruling *in limine* to exclude the testimony of both Demers and Roy, basing his objection on a claimed discovery violation by the State. Pursuant to M.R.Crim.P. 16(b), the State had disclosed upon request Roy's written autopsy reports on the three accident victims and Demers' report of his analysis of a sample of Mylon's blood; in addition, the State had supplied to defense counsel the names and addresses of both men as expert witnesses.

Although finding that the prosecutor had complied with Rule 16(b), the presiding jus-

tice excluded impairment testimony of either expert from the State's case-in-chief. He did leave open the possibility of permitting Roy or Demers as a rebuttal witness, depending upon Mylon's testimony. In making his ruling, the presiding justice noted that the expert testimony the State wished to elicit from Demers and Roy concerned an issue not addressed by or mentioned in the written reports made by them in connection with the instant case and shown to defense counsel. Therefore, the judge felt that the defense would be unfairly surprised if Roy's or Demers' testimony was admitted as part of the State's case-in-chief.

 We deny defendant's appeal on his claim of a discovery violation, without deciding whether in fact the State was in any way in default on its obligations under Rule 16. The presiding justice treated the situation as if a discovery violation had occurred, and then fashioned a perfectly appropriate sanction against the State. The justice barred the use of the Demers expert testimony as to the relationship between alcohol consumption and blood alcohol level during the State's direct case, deferred decision on its admissibility in rebuttal until after Mylon testified, and then permitted its use in rebuttal. When the State has failed to comply with the discovery requirements of Rule 16, the trial judge has broad discretion in choosing the form of sanction to impose, if any at all. *See* M.R.Crim.P. 16(d); *State v. Bishop*, 392 A.2d 20, 25–26 (Me.1978). In situations like that presented by the case at bar, where the noncompliance is not shown to result from any bad faith or reckless disregard of Rule 16 on the part of the prosecutor, the trial court's concern must be primarily to protect the defendant from any unfair prejudice. In the present case, the presiding justice protected defendant in conscientious fashion. Defense counsel did not ask for any of the other sanctions available under Rule 16(d). The trial judge did not abuse his discretion in denying the ultimate sanction of exclusion. *See State v. Landry*, 459 A.2d 175, 178 (Me.1983).

B. *Appropriateness as rebuttal testimony*

■ Mylon argues that the Demers testimony went beyond the scope of proper rebuttal. Rebuttal evidence is "evidence which contravenes, antagonizes, confutes, or controls 'the inference sought to be drawn by new facts introduced by the adverse party at the next previous stage'." *Payson v. Bombardier, Ltd.*, 435 A.2d 411, 413 (Me.1981), *quoting Emery v. Fisher*, 128 Me. 124, 125, 145 A. 747, 747 (1929). Demers' testimony tended clearly to refute and contradict the testimony of Mylon that he had had nothing to drink after 6:00 p.m. the evening before the fatal collision. It was well within the range of the trial judge's discretion to allow Demers to give his expert opinion in rebuttal. "[A]n appellate court will pay considerable deference to the judge's determination of what constitutes proper rebuttal, taking into account the fact that he alone has the opportunity to assess the evidence with the benefit of having heard the testimony sought to be rebutted and of observing the way it went in before the jury." *Payson v. Bombardier, Ltd.*, 435 A.2d at 413.

■ Of course, otherwise proper rebuttal testimony may be excluded, under M.R. Evid. 403, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. But admission of the Demers testimony against any Rule 403 objection was itself a judgment call, reviewed only for clear abuse of discretion. *See State v. Stack*, 441 A.2d 673, 676 (Me.1982). In permitting this rebuttal evidence, the justice presiding at Mylon's trial committed no error.

■ In *State v. Collin*, 441 A.2d 693 (Me. 1982), the trial judge had *excluded* very similar opinion testimony by the same Patrick Demers that was offered by the *defense* to cast doubt on the validity of an intoxilyzer test result presented by the State; this court found no reversible error in the exclusion of the similar evidence. In *Collin*, the evidence failed to link up the proffered Demers opinion about an "average person" to that particular defendant, thus "greatly diminish[ing] the probative value of the evidence sought by defense counsel." *Id.* at 695. Disregarding that shortcoming, which was avoided by the State in the Mylon trial, the *Collin* case and the present *Mylon* case illustrate well the breadth of the trial judge's discretion in doing the judgmental balancing required by Rule 403. On sets of facts that appear identical for all that the appellate records can reveal, one judge may admit the proffered evidence, while another judge may exclude it; and yet it may well be that neither will have committed any reversible error. An appellate court will find no error on the part of either, in absence of a clear showing of an abuse of discretion.

III. *Emergency Doctrine Instruction*

Mylon testified at trial that just before the fatal collision he had been driving 45-to-50 miles per hour (in a 50 m.p.h. zone), when he rounded a curve and saw the Crockett car, with no lights on, stopped in the middle of his travel lane. With no time to take any other action, he said, he swerved to the left but was unable to avoid the Crockett car. Mylon's counsel requested the presiding justice to give an instruction as to the reduced standard of care applicable to one who is suddenly confronted with an emergency. The presiding justice declined to give the requested instruction; and it is Mylon's claim that by failing to instruct the jury as to a defense with rational support in the record, the trial justice committed reversible error. We find no error on this score.

■ A trial judge may decline to give a requested instruction if the jury is otherwise adequately instructed on the point. *State v. Atkinson*, 458 A.2d 1200, 1203–04 (Me.1983). At least four separate times in his instructions, the presiding justice emphasized that the conduct of Mylon "must involve a gross deviation from the standard

of conduct that *a reasonable and a prudent person would observe in the same situation.*" (Emphasis added) The instructions given covered the point raised by Mylon. It was open to defense counsel to argue that, on the basis of the evidence, Mylon could be convicted only if the jury found that he had grossly deviated from what an ordinarily prudent person would have done when faced with the emergency situation that confronted Mylon.

The entry is:

Judgment affirmed.

All concurring.