STATE of Maine

v.

Robert L. DIONNE.

Supreme Judicial Court of Maine.

Argued Jan. 22, 1986.

Decided Feb. 25, 1986.

Janet T. Mills, Dist. Atty. (orally), Auburn, for plaintiff.

Linnell, Choate & Webber, Robert E. Mullen (orally), Auburn, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Defendant Robert L. Dionne appeals from his conviction of arson with intent to collect insurance proceeds, 17–A M.R.S.A. § 802(1)(B)(1) (1983), entered by the Superior Court (Androscoggin County) upon a jury verdict. Finding that none of defendant's numerous claims of error requires reversal of his conviction, we deny the appeal.

## I.

This case arises out of an April 14, 1984 fire that gutted a lake front cottage in Greene owned by defendant, who at the time was director of Lewiston's Fire Prevention Bureau. Expert witnesses for both the prosecution and the defense testified that the fire began between 7:00 and 7:30 p.m. and had been set with the use of a flammable liquid accelerant.

Defendant acknowledged that he visited the cottage within 90 minutes prior to the fire's ignition, offering the following explanation: He testified that he travelled from his home in Leeds to Lewiston to do his laundry. Due to his concern over recent break-ins at the cottage, including one he had discovered earlier that day, defendant stopped on his way to inspect the premises. Finding a sliding glass door slightly ajar, defendant entered the cottage. As it was dusk, defendant lit a candle and examined the interior of the cottage. He then blew out the candle and left. According to defendant, he stopped at the cottage between 6:00 and 6:30 p.m. and arrived at the Lewiston laundromat at 6:50 p.m. Two witnesses testified to having seen defendant at the laundromat at around 7:10 p.m. on the day of the fire.

Defendant testified that he had been at the cottage earlier on that same day and discovered a break-in. According to defendant the perpetrator of this earlier break had removed one of the cottages sliding glass doors from its track. This was consistent, defendant testified, with a number of prior break-ins at the cottage that had occurred between January and March of 1984 in which the perpetrator had gained entry by removing the sliding glass doors. Although defendant did not report these break-ins to the police until after the fire, both the owner of a neighboring cottage and defendant's son corroborated their existence, each having testified that on at least one occasion he discovered the cottage broken into via removal of the sliding glass doors.

The witness who discovered the fire testified to observing a glow inside the cottage. Only later, after hearing an explosion, did he see flames protruding from the building. Barry Norris, an investigator from the State Fire Marshall's office, attributed the explosion to a build up of hot air in the cottage, an indication that the cottage was relatively airtight at the time of the fire. Norris also testified that melting about the door frames signified that the sliding glass doors had been in place during the fire. In addition, Norris related that on one occasion defendant had accompanied him to the fire scene and had several times volunteered the hypothesis that someone broke into the cottage and started the fire. Finally, Norris testified that in investigating suspicious fires, he had encountered various devices, including a candle, used by arsonists to delay ignition of a fire.

At the time of the fire, defendant's cottage lacked electricity, heat, and sewerage disposal. Local zoning laws precluded renovation of the cottage, and the Town of Greene had enforced those laws by stopping renovations of the cottage and forcing defendant to remove a chimney he had installed. In addition, although it had initially granted permission, the town denied defendant's request to install a holding tank system for sewerage disposal. Finally, the cottage had slid off its concrete supports and, when the fire occurred, rested on makeshift posts constructed out of split wood. The State's expert valued the cottage at $5,900 while the defendant's expert determined the value to be $11,500.

Defendant's proposed sewerage disposal system also required certification by the State Department of Human Services, Division of Health Engineering. By a 1982 letter, the department finally denied defendant's request for certification. Nevertheless, investigator Norris testified that shortly after the fire, defendant told him that he had State approval for a sewerage system. Norris also stated that defendant denied having problems with the cottage. As to his future plans concerning the cot-

tage, defendant testified that he hoped to utilize the cottage as a summer home, spending winters in Florida. Defendant admitted, however, that one evening after a heated meeting with town officials, he expressed a wish that the cottage would burn.

In July, 1983, defendant changed the agency and the company providing insurance on the cottage, as well as on his other insurable property. The new policy insured the cottage in the amount of $25,000. Defendant testified that he changed insurance because of dissatisfaction with the processing of prior claims. Responses on the insurance application, however, identified lower premiums as the reason for the change and denied the existence of prior claims to other insurance companies. The application also misrepresented the number of rooms in the cottage and the existence of a heating system. While processing the application, the insurance company requested a photograph of the cottage, but the photo it received actually depicted defendant's year-round residence in Leeds. Finally, the underwriter who approved the policy testified that she would not have done so had she known the true condition of the cottage.

The record contains conflicting evidence as to whether defendant, his local insurance agent, or agency personnel were responsible for the wrong photo being sent to the insurance company and for the inaccuracies in the insurance application. The application, however, bears defendant's signature, and the State introduced an out of court statement by defendant that he had personally completed the application. After the fire, defendant filed a proof of loss in the amount of $17,500.

After a four day trial, the jury returned a guilty verdict. From a judgment of conviction entered thereon defendant appeals, claiming numerous errors.

## II.

At the outset, defendant challenges the sufficiency of the evidence to support the jury's verdict. Whether direct or circumstantial, evidence is sufficient to support a guilty verdict if a jury, viewing that evidence in a light most favorable to the prosecution, rationally could have found all elements of the crime to be proven beyond a reasonable doubt. *State v. Hardy*, 489 A.2d 508, 510 (Me.1985).

■ Despite conflicting testimony, the jury could have concluded that defendant deliberately set out to insure uninsurable property in an amount greatly exceeding its value based on 1) the insurance application containing material misrepresentations and bearing defendant's signature, 2) the incorrect photo having been sent to the insurance company, and 3) the appraisal testimony. The evidence also revealed that local zoning ordinances barred the improvement of the property necessary to make it habitable and marketable. The defendant himself admitted that at one point he expressed a wish that the place would burn. On this evidence, a jury could have rationally found both a plan and a motive for arson with intent to collect insurance proceeds.

As to opportunity, defendant presented testimony placing him in a Lewiston laundromat near the time the fire started. An experienced fire investigator, however, testified that he had encountered various devices used by arsonists to delay ignition of a fire and that a candle is one such device. The jury also could have rationally inferred that defendant, professionally involved in fire prevention for years, would have been aware of a candle's potential as a delay device. Defendant himself testified that he inspected the cottage 30 to 90 minutes before the fire commenced using a candle for illumination. Viewed most favorably to the prosecution, this evidence supports a conclusion that defendant had the opportunity to commit the crime.

Other evidence points more directly to defendant as perpetrator. Norris testified that the sliding glass doors were in place and the cottage was relatively airtight at

the time of the fire. The record contains no evidence that the fire scene displayed signs of forced entry. Even if the jury believed testimony as to prior break-ins via the glass doors at the cottage, it could have concluded that in this case the perpetrator did not break in but instead let himself in. We conclude that the record contains sufficient evidence to support a rational finding of guilt beyond a reasonable doubt.

### III.

Defendant next contends that the trial justice erred in denying his motion for new trial based on alleged juror misconduct. We need not address this issue because the record reveals that defendant's motion was not properly before the Superior Court.

All motions for new trial based on any ground other than newly discovered evidence must be made within ten days of the verdict unless the court grants an extension within the ten days. M.R.Crim.P. 33. The jury returned its verdict in this case on April 26, 1985. Defendant filed his motion on May 21, 1985. Thus, unless evidence of juror misconduct can be characterized as newly discovered evidence, defendant's motion was not timely.

■ In *State v. Gatcomb*, 478 A.2d 1129, 1130–31 (Me.1984), we held that evidence of juror misconduct does not constitute newly discovered evidence and that when such evidence comes to light after Rule 33's ten day time limit has expired, the defendant must pursue relief in post-conviction proceedings. In light of *Gatcomb*, the Superior Court erred in entertaining and ruling on the merits of defendant's motion for new trial. The court's ruling must be vacated and the case remanded for entry of an order dismissing the motion for new trial.

### IV.

■ Prior to trial, defendant moved to exclude testimony concerning expert analysis of charred material removed by fire investigators from defendant's cottage.

Upon request, the State must allow the defendant to conduct reasonable tests on physical evidence possessed by the prosecution and material to the preparation of defendant's case. M.R.Crim.P. 16(b)(1), (b)(2)(A). The record reveals that defendant early on requested that the samples of charred material be preserved to allow independent tests to be made. Through inadvertence, this request was not conveyed to the laboratory conducting tests on behalf of the prosecution, and the lab destroyed the samples as a matter of routine. Thus, the record reflects an unintentional violation of the State's duty under Rule 16.

By moving to exclude testimony concerning the test results, defendant in effect sought to have the court impose a sanction pursuant to M.R.Crim.P. 16(d) for the State's discovery violation. The Superior Court has broad discretion to decide what sanction, if any, should be imposed for a violation of Rule 16. *State v. Mylon*, 462 A.2d 1184, 1186 (Me.1983). In denying defendant's requested sanction, the motion justice relied on the following factors. The samples destroyed in this case were not unique as the gutted cottage remained full of similar charred material. Defendant had continuous access to the cottage and possessed sufficient expertise regarding fire investigations to appreciate the importance of obtaining and testing charred material. The absence of the tested samples did not preclude defendant from impeaching either the methods used by the State's expert or the conclusions drawn from the test results. In these circumstances, we cannot say that the motion justice abused his discretion by refusing to impose the exclusionary sanction requested by defendant.

### V.

■ Both before and during trial, defendant objected to testimony by investigator Norris about devices capable of delaying the ignition of a fire. Defendant contended at trial, and now contends on appeal, that such testimony should be exclud-

ed because it is irrelevant and as a sanction for an asserted discovery violation by the State.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.Evid. 401. The existence of opportunity, while not an ultimate fact, constituted a fact of consequence in the circumstantial case against defendant. Norris did not speculate as to the utility of any particular device for delaying the ignition of a fire; he merely related the fact of having encountered various delay devices, among them a candle, in investigating suspicious fires. Linked with defendant's professional involvement in fire prevention and his testimony that he inspected the cottage utilizing a candle within 90 minutes of the fire's ignition, Norris' testimony makes more probable the fact that, despite an alibi, defendant had the opportunity to commit the crime charged.

Defendant bases his claim of a discovery violation on a pre-trial order compelling the State to disclose the conclusions of its experts. It is unclear that the State's failure to apprise defendant of Norris' testimony violated this order because Norris did not express an opinion as to the role of a delay device in this case, but merely related the fact of having encountered such devices in prior arson investigations. The trial justice, however, apparently assumed that a discovery violation existed. After inquiring of defense counsel what he would have done differently had he been informed earlier of the delay device testimony, the court denied defendant's motion due to lack of prejudice.

We find no error in the court's admission of Norris' testimony.

## VI.

As his next claim of error, defendant challenges the exclusion of certain testimo-

ny by his expert witness, William Galvin. Galvin was the last witness to testify one day during trial. His testimony proceeded through redirect and recross examinations, at the close of which both counsel informed the court that they had no further questions for the witness. The next morning, however, defense counsel proposed to recall Galvin. In an unrecorded chambers conference, the trial justice ruled, after objection by the State, that Galvin could retake the stand to testify about certain matters but would not be permitted to relate his conclusions regarding the type of accelerant used to set the fire.

■ As the court's ruling excluding Galvin's testimony occurred in an unrecorded conference, the parties submitted a stipulation as to what transpired. The stipulation, however, sets forth only the basis of the State's objection to Galvin's testimony and does not identify the basis for the court's ruling. An appellant has an affirmative duty to provide the reviewing court with an adequate record upon which consideration can be given to any claim of error raised. *International Silver Co. v. Digirolamo*, 475 A.2d 1143, 1144 (Me.1984). Because the record does not disclose the basis for the court's exclusion of Galvin's testimony, we cannot determine the propriety of that ruling. Defendant has failed to adequately present this issue for consideration.

## VII.

Defendant finally contends that the court erred by refusing to adopt his requested jury instruction regarding circumstantial evidence and proof beyond a reasonable doubt. The record reveals that the court adequately instructed the jury as to these matters. Defendant's contention is without merit.

The entry is:

Judgment affirmed.

Order denying motion for new trial based on jury misconduct vacated. Remanded

for entry of an order dismissing the motion.

All concurring.