**STATE of Maine**

v.

**Anthony D. NAOUM and
Marion Gidney.**

Supreme Judicial Court of Maine.

Argued June 7, 1988.

Decided Sept. 13, 1988.

David W. Crook, Dist. Atty., Pamela Ames, Asst. Dist. Atty., Alan P. Kelley (orally), Deputy Dist. Atty., Augusta, for plaintiff.

Richard S. Emerson, Jr. (orally), Childs, Emerson, Rundlett, Fifield & Childs, Portland, for Naoum.

Justin W. Leary (orally), Lewiston, for Gidney.

* Scolnik, J. sat at oral argument and participated in the initial conference but retired before this

Before McKUSICK, C.J., and
WATHEN, GLASSMAN, SCOLNIK *
and CLIFFORD, JJ.

CLIFFORD, Justice.

Defendant Anthony Naoum appeals from convictions of arson, and conspiracy to commit arson 17–A M.R.S.A. §§ 802, 151 (1983 & Supp.1987), and attempted theft by deception 17–A M.R.S.A. §§ 152, 354 (1983), and defendant Marion Gidney appeals from convictions of arson and conspiracy to commit arson 17–A M.R.S.A. §§ 802, 151, following a consolidated jury trial in Superior Court, Kennebec County. On appeal, defendants contend that the Superior Court erred in making various evidentiary rulings and in denying motions to dismiss the indictment and for a mistrial. Finding no reversible error, we affirm the judgment.

The relevant facts may be summarized as follows: On July 16, 1985, in the early morning, a building on Water Street in Gardiner owned by defendant Naoum was destroyed by fire. Investigation revealed that the fire had been deliberately set and that the building's sprinkler system had been disabled before the fire. There was evidence of Naoum's tampering with the system a few days before the fire. The building housed Naoum's business, Business Systems, which at the time of the fire was in financial difficulty. Substantial money was owed to the Small Business Administration (S.B.A.), and the S.B.A. was scheduled to do an inventory of the business on the day of the fire. The inventory and the real estate were both covered by fire insurance, and after the fire Naoum applied to recover the insurance proceeds. Naoum was the sole shareholder of the corporation, having purchased the interest of two other shareholders, one of whom was Charles Elliot, during a corporate battle for control. Naoum claimed that Elliot set the fire as revenge against Naoum.

Within a short time of the explosion that occurred when the fire started, a woman

opinion was adopted.

was seen running from the doorway of the business building. A witness, Kenneth Johnson, later observed a woman walking at a quick pace in an area near the fire, climb over a fence and disappear. Johnson later identified the woman as Gidney, the girlfriend of Naoum. Gidney was found in the early morning hours of July 16, under a bush on Brunswick Avenue in Gardiner at the home of Linda Naoum, Naoum's sister. Naoum claimed that he and Gidney were in Kittery at the time the fire was set, but Gidney's first story told to the police was inconsistent with that.

Naoum and Gidney and Linda Naoum [1] were charged with arson (Count I), conspiracy to commit arson (Count II), and Naoum with theft by deception (Count III), in relation to the fire. In addition, Naoum was charged with theft by deception, insurance fraud (24–A M.R.S.A. § 2178), and making a false report (17–A M.R.S.A. § 509) in regard to an alleged claim for burglary of business property for which he received insurance proceeds, occurring in 1983 [2] (Counts IV, V and VI), and with theft by deception and insurance fraud involving a 1984 claim of damage to business property to collect insurance proceeds (Counts VII and VIII). Counts IV through VIII were severed from Counts I through III. Naoum and Gidney were convicted on Counts I and II, and Naoum on Count III.

## I.

■ Defendant Naoum challenges the Superior Court's denial of his motion to dismiss the indictment. The motion was based on the State's alleged violation of

M.R.Crim.P. 6. On September 6, 1985, Linda Naoum was in the Kennebec County Courthouse waiting to testify before the grand jury, when she was asked to step into the grand jury hearing room, apparently for the purpose of allowing a witness who was there testifying before the grand jury, to determine if he could identify her as the female he had reported seeing near the scene of the fire. She stood momentarily just inside the grand jury hearing room door. Nothing was said by anybody during the brief period she stood near the door. After she left the room, the witness could not identify her as the person he had seen near the fire. M.R.Crim.P. 6 provides:

(d) *Presence During Proceedings*

While the grand jury is taking evidence, only the attorneys for the State, the witness under examination, and, when ordered by the court, an interpreter and a court reporter may be present. While the grand jury is deliberating or voting, only the jurors may be present.

The motion justice found that Linda Naoum's brief entry into the grand jury hearing room was not an unauthorized presence within the meaning of Rule 6(d) and that, even if it were, none of the reasons for grand jury secrecy were compromised.[3] Further, in denying the motion to dismiss, the motion justice found no prejudice to have been suffered by defendant Naoum. We agree. While there may have been a violation of the language of Rule 6(d), defendant Naoum has shown no prejudice to him, nor a serious compromise of grand jury secrecy, and the denial of the motion to dismiss was well within the discretion of

---

1. The charges against Linda Naoum were later dismissed by the State.

2. Charles Elliot has admitted his involvement with Naoum in the bogus burglary scheme. *See* Part VI *infra*.

3. In *State v. Levesque,* 281 A.2d 570 (Me.1971), we listed the reasons for grand jury secrecy: '(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and

later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.'

281 A.2d at 573 (quoting *United States v. Rose,* 215 F.2d 617, 628–29 (3rd Cir.1954)). The motion justice correctly concluded that Linda Naoum's presence in the grand jury hearing room did not involve any breach of secrecy.

the motion justice. *See State v. Clough*, 49 Me. 573, 576–77 (1861).

## II.

The testimony of Barry Norris, an expert witness who gave his opinion that the fire was deliberately set, included the following:

> The biggest indicator to tell us that it was deliberately set was the sprinkler system. Had it been other than deliberately set—normal people for revenge, whether it's a grudge, whatever the reasons, will go in, set a fire, and, yes, they will use a flammable combustible liquid.

Norris further testified that he did not know who set the fire. The trial court sustained Naoum's objection to that part of Norris' testimony and instructed the jury that they should disregard the witness' comments as to who may have set the fire or what the motive of the person who set the fire may have been.

Naoum contends that in the above-quoted testimony Norris actually was giving his opinion that the fire did not appear to be a revenge fire, and because that was beyond his expertise and that it disputed Naoum's defense that the fire was a revenge or grudge fire, that the court abused its discretion in denying Naoum's motion for mistrial.

■ Because the trial court has a "superior vantage point in assessing the impact of objectionable testimony," we review a ruling on a motion for mistrial only for abuse of discretion, *State v. Jones*, 523 A.2d 579, 581 (Me.1987), and we find none here. Contrary to Naoum's contention, the testimony of Norris was ambiguous as to whether this was a revenge or grudge fire.

Moreover, the court instructed the jury to disregard any of Norris' testimony as to who may have set the fire, or what the motive may have been. We presume that a jury will follow a curative instruction, and such an instruction will be considered inadequate "[o]nly where there are exceptionally prejudicial circumstances or prosecutorial bad faith." *State v. Hilton*, 431 A.2d 1296, 1302 (Me.1981). There being no such exceptional circumstances or prosecutorial bad faith here, the court's curative instruction was adequate, and its denial of the mistrial motion was well within its discretion.

## III.

To advance his theory that the fire was set not by him, but by his disgruntled former business associate, Charles Elliot, Naoum attempted to offer through two witnesses statements of Elliot made in the presence of these witnesses to the effect that Elliot thought Naoum was a lousy businessman and that he could get Naoum's customers away from him, that Naoum's company was going out of business and that it was a good time to buy Naoum's property. Naoum claims error in the court's exclusion of this testimony as hearsay under M.R.Evid. 802.[4] Naoum argues that because the statements were not offered for the truth of the matter asserted, they were not hearsay at all, and in any event, they were otherwise admissible as statements of Elliot's state of mind under M.R.Evid. 803(3)[5] as an exception to the hearsay rule.

■ The statements excluded by the trial court were not hearsay because they were not offered for the truth of the mat-

---

4. M.R.Evid. 802 excludes hearsay evidence from admissibility. M.R.Evid. 801(c) defines hearsay as follows:

> **(c) Hearsay.** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

5. M.R.Evid. 803(3) provides, in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> ....

> **(3) Then Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates *to the execution, revocation, identification, or terms of declarant's will.*

ter asserted. *See* M.R.Evid. 801(c). However, because their relevance to Naoum's defense was so tenuous, their exclusion was harmless. The statements demonstrate Elliot's belief that Naoum was a poor businessman and may have been in financial jeopardy, but, contrary to Naoum's contentions, do not reveal any motive for setting the fire, or any intent or design to set the fire. The evidence in this case is unlike that in *State v. Mason*, 528 A.2d 1259, 1261 (Me.1987), where the statements of the victim that he would "get even" with the defendant were held to be improperly excluded because they showed a "hostility toward and intent to seek revenge on the defendant." *Id.* Here, the statements are not those of the "sole or principal prosecution witness," *Mason*, 528 A.2d at 1262, but of a third party, and show neither a motive nor intent to set the fire. The error, if any, that may have been committed in the exclusion of the statements made by Elliot is harmless, since it is " 'highly probable that the [exclusion of the statements] did not affect the [conviction].' " *State v. True*, 438 A.2d 460, 467 (Me.1981) (quoting R. Traynor, *The Riddle of Harmless Error* 35, 49–51 (1970)).

### IV.

■ Defendant Naoum next contends that the trial court erred in refusing to allow him to elicit from Gladys Naoum, Naoum's mother, and Linda Naoum in his cross-examination of them statements made to them by Anthony Naoum on the night of the fire. Our review of the record leads us to conclude that these statements were correctly excluded by the trial court as hearsay under M.R.Evid. 802. Although the scope of cross-examination under Maine's Rules of Evidence is broad,[6] merely because a subject matter has been covered in direct examination, does not allow the cross-examiner to adduce otherwise inadmissible evidence, such as hearsay. R. Field & P. Murray, *Maine Evidence* § 103.8, at 22 (2d ed. 1987).

6. *See* M.R.Evid. 611(b).

### V.

At trial, Kenneth Johnson identified Marion Gidney as being the woman he observed in the vicinity of the fire on the night of the fire. Gidney contends the identification was tainted by a prior identification of Gidney by Johnson, and that her motion to suppress the evidence made during trial should have been granted.

■ In-court identification of a witness will be allowed by the trial court unless the defendant seeking to exclude the identification demonstrates by a preponderance of the evidence that the pretrial identification procedure was unnecessarily suggestive. If the pretrial identification procedure is shown to be tainted by suggestions, the burden then shifts to the State to prove by clear and convincing evidence, i.e., to a high probability, that "the corrupting effect of the suggestive procedure is outweighed by the reliability of the identification." *State v. Cefalo*, 396 A.2d 233, 238–39 (Me.1979).

■ Although there was some conflicting evidence, Johnson testified that as he was sitting in a crowded hallway outside the grand jury room waiting to testify, he recognized a woman when she came up the stairs as the woman who walked by his house the night of the fire, and he immediately related this to an officer with whom he was sitting. The court found that the identification of Gidney by Johnson outside the grand jury room was spontaneous, not resulting from any plan to search out and identify witnesses, nor from any suggestion on anyone's part, and concluded that there was no "improper or impermissible taint of identification." We afford great deference to the court's factual findings, *Cefalo*, 396 A.2d at 239. In this case, the court based its conclusion that the pretrial identification was not tainted on a finding of spontaneity. Since the defendants failed to convince the trial court that the pretrial identification was unnecessarily suggestive, the State was not required to demonstrate that the reliability of the identification outweighed any corrupting effect, and

the court correctly allowed the in-court identification testimony of Johnson at trial.

## VI.

■ Defendants contend finally that the trial court erred in denying their motion *in limine* to limit the State's cross-examination of Charles Elliot, a potential defense witness. It was the theory of the defense that the fire was set by Elliot, a former shareholder with Naoum in the business, and they intended to call Elliot as a defense witness and examine him in regard to recent bad feelings between him and Naoum for the purpose of demonstrating Elliot's motive to set the fire. In advance of their calling Elliot as a witness, defendants requested a ruling that the State would not be allowed to cross-examine him in regard to an alleged 1983 staged theft of business equipment fraudulently perpetuated by Naoum and Elliot to collect insurance proceeds. Naoum stood indicted for that scheme in Counts IV, V and VI, those counts having been severed from the arson and related charges involved in the instant trial. The court refused to limit the right of the State to cross-examine Elliot and denied the *in limine* motion.[7] After the denial of the motion, the defendants chose not to call Elliot as a witness. Because defendants did not examine Elliot as a witness and make appropriate objections to questions asked of him by the State in cross-examination, the defendants' objection to the court's *in limine* ruling was not preserved. *See* M.R.Evid. 103(a). We review the ruling only for obvious error affecting substantial rights. M.R.Crim.P. 52(b); M.R.Evid. 103(d). When the alleged error is unpreserved, we will vacate the judgment of conviction only if "the conviction was produced by a fundamentally unfair trial." *State v. Dunn,* 480 A.2d 788, 790 (Me.1984).

■ M.R.Evid. 611(b) provides that a witness may be examined on any matter relevant to any issue in the case. Evidence otherwise admissible, as was the evidence the State intended to elicit pertaining to the prior relationship between Naoum and Elliot, it having been made relevant by defendants' proposed examination of Elliot on their recent deteriorated relationship, can be excluded only under the provisions of M.R.Evid. 403.[8]

■ The discretionary rulings of the court under M.R.Evid. 403 should not be set aside absent a clear abuse of discretion. *State v. Mylon,* 462 A.2d 1184, 1187 (Me. 1983). The prior business relationship between Elliot and Naoum does include a bogus burglary committed to defraud an insurer, similar to the case against Naoum. However, this is not a case of the State attempting to present evidence of the prior incident in its case-in-chief or in its cross-examination of Naoum. Rather, defendants sought to examine a non-party witness, Elliot, and to show his motive to commit the arson by bringing out only the antagonistic aspect of his relationship with Naoum. The defendants sought to limit the State from exposing to the jury the complete relationship between the two men, a relationship of long standing that was not always antagonistic. Their prior business dealings, including the joint participation in the bogus burglary (neither of the two had been charged at the time of the arson), and Elliot's knowledge of the business and its financial health, and that a fire would financially benefit the business and Naoum, are relevant on the very issue of Elliot's motives to set the fire.

Because the State's expected cross-examination of Elliot would have given the jury a clearer picture of the entire relationship between Naoum and Elliot, and was highly relevant to any motive Elliot may have had for setting the fire, we cannot say that as a

---

7. As an additional reason for denial of the *in limine* motion, the trial justice ruled that the State had a right to attack Elliot's credibility under M.R.Evid. 608(b). However, the relevance of the evidence to Elliot's motive appears to be the primary reason.

8. M.R.Evid. 403 provides, in pertinent part, as follows:

Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of *unfair* prejudice

(emphasis added).

matter of law the unfair prejudice of that evidence so substantially outweighed its probative value that the court's ruling was a clear abuse of discretion. *Mylon*, 462 A.2d at 1187. Moreover, the ruling of the court denying the *in limine* motion to prevent the defendants from limiting the jury's consideration to those aspects of Elliot's relationship with Naoum favorable to their case, did not so clearly interfere with their right to a fair trial as to constitute obvious error. *State v. Nason*, 498 A.2d 252, 255 (Me.1985).

The entry is:

JUDGMENT AFFIRMED.

McKUSICK, C.J., and GLASSMAN, J., concurring.

WATHEN, Justice, dissenting.

I am unable to agree with the opinion of the Court with respect to the in limine ruling concerning the testimony of Charles Elliot. I respectfully dissent.

During the trial, Naoum informed the court of his intention to call as a witness, Charles Elliot, a former co-shareholder and co-worker of Naoum, for the purpose of imputing guilt to Elliot by establishing Elliot's motive to set the fire. Naoum contended that recent bad feelings between the two men stemming from their business relationship provided a basis for Elliot's motivation. In the motion, in which Gidney joined, defendants sought a ruling that, if defendants were to call Elliot as a witness to testify to his recent bad feelings for Naoum, the State would be precluded on cross-examination from inquiring into certain incidents of prior bad conduct engaged in by Elliot and Naoum. The presiding justice ruled that he would not limit cross-examination and therefore defendants chose not to call Elliot as a witness.

The presiding justice based his ruling on two premises: one, that under M.R.Evid. 608(b), the State was allowed in this instance to inquire into prior bad conduct for the purpose of attacking the witness's credibility and two, that if the jury was to hear any testimony concerning the relationship between Naoum and Elliot, it was entitled to hear the complete history of that relationship. I disagree with both conclusions.

The premise that the testimony is admissible for impeaching the witness's credibility under Rule 608(b) is inapplicable in this case. Although the presiding justice has the discretion to allow inquiry into prior bad acts for purposes of impeachment, in this case there was no feasible reason for the State to attempt to impeach this witness. The testimony that the State intended to elicit from Elliot, other than the impeachment testimony, would have strengthened its prosecution of defendants, and an attack on his credibility would have defeated the State's purpose. It was an abuse of discretion to allow inquiry for the ostensible purpose of impeaching the witness's credibility.

With respect to the need for the jury to hear the complete history of the relationship, this presents a clear example of the probative value of evidence being substantially outweighed by the danger of unfair prejudice. M.R.Evid. 403.[1] The testimony proposed for cross-examination would at most have suggested that the relationship between the two men was not always adversarial and that at least on one occasion cooperation and mutual trust existed between them. Evidence of a relationship based on cooperation rather than resentment does not refute defendants' suggestion of motive. Such a relationship could be viewed as supporting defendants' suggestion of motive and, in any event, the probative value of evidence allowed by the ruling would have been minimal. At the same time, the unfair prejudice to defendants would have been significant. The nature of the prior bad act of the witness would implicate Naoum in criminal conduct similar to the conduct for which he was standing trial.[2] Defendants chose not to

1. In pertinent part, M.R.Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...."

2. In fact the prior bad act was the subject of counts four through six in the present indict-

 

call the witness and were unable to impute the blame onto Elliot in an effort to create reasonable doubt as to their own guilt. Because the probative value of the evidence allowed by the court's ruling was so tenuous and minimal and the danger of unfair prejudice was so extreme, I conclude that defendants were erroneously deprived of a defense. I would vacate the convictions on the grounds of obvious error.

ment against Naoum. By order of Superior Court, these counts were severed from the charges presently on appeal in order to avoid prejudice to Gidney.