**Joe SPIEGEL, et al., Plaintiffs-Appellees,**

v.

**CITY OF HOUSTON et al., Defendants,**

**City of Houston, Jim McConn, Mayor, Harry Caldwell, Chief of Police, and B. K., Johnson, Deputy Chief of Police, Defendants-Appellants.**

No. 79–3811.

United States Court of Appeals,
Fifth Circuit.
Unit A

Feb. 9, 1981.

Rehearing and Rehearing En Banc
Denied March 9, 1981.

---

Dale M. Tingleaf, Sr. Asst. City Atty., Adolph Guerra, Asst. City Atty., Houston, Tex., for defendants-appellants.

D. Reid Walker, Houston, Tex., for W. L. Hayden, et al.

Woody & Rosen, Marian Rosen, Clyde W. Woody, Houston, Tex., for plaintiffs-appellees.

Before COLEMAN, CHARLES CLARK and REAVLEY, Circuit Judges.

COLEMAN, Circuit Judge.

Plaintiffs-appellees Joe Spiegel and David Gee own a substantial portion of the "adult" movie theatres in Houston, Texas. Along with Melody Hutchins (an employee of one of Spiegel's theatres), they filed suit against the City of Houston, its Police Department, the Harris County District Attorney, and individuals working for these entities alleging the named government entities and their employees had conspired in viola-tion of statute and the Constitution to drive the theatres out of business. They asked for monetary damages and an injunction forbidding certain police practices. On October 25, 1979, the District Court granted plaintiffs a preliminary injunction forbidding the Houston Police Department and its members from forcing patrons of adult theatres to give their names and addresses and forbidding the arrest of employees of these theatres where the arrest tends to close down the theatre. The governmental entities and the named police officers appeal the preliminary injunction, contending that (1) Spiegel, *et al.* do not have the standing to assert the constitutional rights of third party employees and prospective patrons, (2) appellees failed to meet the four part test required to justify a preliminary injunction, and (3) the injunction is overly broad and grants plaintiff-appellees a privileged position among potential targets of law enforcement activities. Since we find merit in the argument that the injunction is overly broad, we reverse it and return it to the District Court for revisions not inconsistent with this opinion.

Prior to 1979 the Texas Commercial Obscenity statutes, Articles 43.21 *et seq.* of the Texas Penal Code, did not classify the showing of an obscene film as a felony offense. In 1979 the Texas legislature made substantial changes in the statute, changing the definition of obscenity, and making some violations a felony. The changes were to become effective September 1, 1979. On August 23, 1979, plaintiff Joe Spiegel and other corporate entities also plaintiffs in this suit challenged the constitutionality of the new Commercial Obscenity statute. On August 31 the District Court granted a preliminary injunction, staying enforcement of the statute. After a hearing on the merits the District Court dissolved its injunction. Spiegel appealed to this Court and initially received a stay of enforcement of the statute. This Court lifted the stay October 12, 1979, allowing full enforcement of the new statute.

Defendant-appellants contend this suit by Spiegel in his attempt to stay enforcement

of §§ 43.21 and 43.23 by other means. Since the District Court's preliminary injunction does not prevent appellants from prosecuting appellees for any allegedly obscene movie they choose to show, but only affects the timing of arrests of theatre personnel and the questioning of theatre patrons, we find no merit in this argument.

Appellees, on the other hand, assert that appellants have conspired by utilizing law enforcement methods not necessary in the enforcement of the Commercial Obscenity statutes to harass its employees and patrons, with the intention being to make it close down its theatres for lack of business. Appellees cite four incidents as proof of this conspiracy. Three occurred before the effective date of the revised Commercial Obscenity statute and one occurred after.

Incident Number One concerns arrests at the August 8, 1978 premiere of the film "Sex World", shown at the Village Theatre. The theatre had advertised heavily to the public and press that the star of the film, Leslie Bovee, would be present and would perform a dance. Two vice officers of the Houston Police who attended the premiere found Ms. Bovee's topless dance so objectionable that they arrested her for lewd conduct. They also arrested the manager of the theatre, Bernard Pearson, and the representative of the film distributor, Jeff Steinman, for aiding and abetting the lewd conduct. Steinman was also charged with possession of a small amount of cocaine. All charges were subsequently dismissed. This incident is unlike the other three in that it does not involve the confiscation of a film, the detention and questioning of patrons, or the closing of the theatre. Its only relation to the other three cited instances of alleged police harassment is that one of the owners of the Village Theatre was Joe Spiegel.

Incident Number Two occurred June 4, 1979, at the West Branch Theatre, owned by plaintiff David Gee. Members of the Vice Squad served an arrest warrant and a search warrant for the film "Behind the Green Door." They arrested the cashier, Lonnie Meredith, and detained the ten patrons of the theatre an estimated 10–15 minutes to take their names and addresses. On reports prepared by the officers, patrons were listed as "suspects" who were "arrested and released at the scene." The reports included a diagram showing the actual location of each patron in the theatre. Charges of commercial obscenity lodged against Lonnie Meredith were later dropped in exchange for his agreement to testify before a grand jury. The appellants offered no explanation of what Meredith was expected to testify to or what indictments the grand jury could return in the area of Commercial Obscenity. At the time Meredith was charged, Commercial Obscenity was not a felony in Texas and was therefore not chargeable by the grand jury. At the same time Meredith was arrested, a warrant was issued for the arrest of David Gee for selling a print of an allegedly obscene film. This arrest was later dismissed when it was discovered that the signature of the police officer on the warrant had been forged.

Incident Number Three occurred at the Deauville Theatre, owned by Joe Spiegel. Vice Officers confiscated the movie "Teenage Pajama Party" and arrested the cashier/ticket taker, Melody Hutchins. Although police took all the patrons' names they inexplicably left the names and addresses out of the file they prepared for prosecution. The Deauville is a twin-cinema, one side showing X-rated films and the other showing films of a less explicit nature. Both share a common entrance, lobby and projection booth. Because of Hutchins' arrest the X-rated side of the theatre closed but the other remained open. Charges against Ms. Hutchins were later dropped.

The final incident of the four appellees cite occurred October 16, 1979, at the Cinema West. It occurred four days after the stay placed on the enforcement of the revised Texas Commercial Obscenity statute had been lifted by this Court. Because of the timing, interest by the news media on how the police would enforce the new statute was at a high pitch.

Vice officers confiscated the films "Pro Ball Cheerleaders" and "John Holmes Su-

perstar." They arrested the manager of the theatre, Lois Goodman, and sought to arrest the ticket-taker, Kathryn Spiegel (who is the wife of Joe Spiegel). She was not at the theatre at the time the raid was made and was picked up the next day. All patrons (approximately 30) were detained and their names and addresses taken.

The unique element in this incident was the presence of television cameras and reporters from both radio and television stations. Testimony in the record indicates that the television personnel came in either with or immediately after the vice officers. The movie stopped abruptly, the lights were turned up high and television cameras began filming patrons being questioned by the police. Some patrons slouched in their seats and covered their faces in order to avoid being filmed. Several patrons indicated their discomfort and declared they would not return. When they were no longer involuntarily detained, patrons left very quickly through the exits. Film of their detention and questioning was shown on the afternoon news by at least one television station. Business at the Cinema West fell by 50% the next day and continued at this low level into and beyond the date that plaintiffs filed this suit.

Vice officers responsible for the Cinema West raid said they did not know how the news media knew about the raid. One speculated that they could have learned of it by listening to police band radio. He admitted that one of the television reporters who was later at the scene of the raid had been in the vice squad's office earlier that day and might have heard of the raid as it was being planned. Police officers admitted that they had control of the scene at which the patrons were detained and could have easily excluded television cameras but chose not to do so. They said that news media representatives were allowed full access to the interior of the movie theatre as long as they did not get in the way of police officers questioning the patrons.

Plaintiffs filed this suit October 22, 1979, citing violations of 42 U.S.C. 1981, 1983, 1985, 1986 and 1988 and the First, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments of the Constitution. They asked for monetary and injunctive relief. On October 25, 1979, the District Court granted plaintiffs a preliminary injunction from which appellants appeal.

As mentioned *ante*, the preliminary injunction limits some police methods but does not prevent enforcement of the Commercial Obscenity statutes. There are no prosecutions pending against plaintiffs which would be affected by this injunction. Therefore, we do not have to consider the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970). The question now here is not whether any of the seized films were obscene, since none of the raids has resulted in a judicial determination of violation of §§ 43.21 or 43.23 of the Texas Penal Code. What we must determine is whether the issuance of the preliminary injunction under Rule 52 of the Federal Rules of Civil Procedure[1] was an abuse of discretion. *Johnson v. Radford*, 449 F.2d 115 (5th Cir. 1971); *Southern Calif. Petrol Corp. v. Harper*, 273 F.2d 715 (5th Cir. 1960).

■ We find little merit in appellants' assertion that appellees have no standing to assert the rights of employees and patrons in this suit. Appellees consist of owners and an employee of an adult movie theatre affected by the acts complained of. It is axiomatic that (with narrow exceptions) one may not claim standing to vindicate the constitutional rights of a third party. *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The crux of appellees' complaint is not the violation of their patrons'

---

1. Rule 52(a) states in pertinent part that "... in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous...."

rights[2] but rather the harm to the appellees' financial interests caused by the alleged violations. Appellees have standing to assert such damages. *Singleton v. Wulff*, 428 U.S. 106, 113, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

Appellants contend appellees failed to prove any of the requirements for issuance of a preliminary injunction. These are:

 (1) substantial likelihood that plaintiff will prevail on the merits;

 (2) the existence of a substantial threat that plaintiff will suffer an irreparable injury if the injunction is not granted;

 (3) the threatened injury to plaintiff outweighs the threatened harm that the injunction will cause defendant;

 (4) that the granting of the injunction will not disserve the public interest.

■ In order to prevail plaintiff must carry the burden on all four elements. *Canal Authority of the State of Florida v. Calloway*, 489 F.2d 567 (5th Cir. 1974); *Clements Wire & Manufacturing Company, Inc. v. NLRB*, 589 F.2d 894 (5th Cir. 1979).

■ The District Court found that the enjoined activities were done in a manner which tended to and actually did "... discourage patrons from visiting plaintiff's businesses..." and further that the activities had "... little if any use in effectuating criminal prosecutions." In the course of the hearings on the preliminary injunctions agents of appellants, including the law enforcement officers involved in some of the raids and their supervisors, were asked to explain their rationale for arresting theatre employees in the middle of the business day and for detaining theatre patrons to take their names and addresses. Appellants offered no explanation for the timing of the arrests except that this was discretionary with the arresting officer. On the question of the detention of patrons appellants offered several hypothetical explanations, all of which the District Court discounted as

pretextual. Since none of the films involved at the time of the raids had been determined as obscene according to appropriate community standards, they are, until the contrary is shown, entitled to First Amendment protection. *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973); *Bantam Books v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). In view of this deficiency and the governing Constitutional principle, we are left in no position to say that the District Court determination that plaintiff-appellees would probably prevail on the merits was an abuse of discretion.

■ Appellants argue that appellees did not prove there was a substantial likelihood that they would suffer irreparable injury if the injunction was not granted. It cited Spiegel's statement that business decreased 50% at the Cinema West theatre after detained patrons were shown on the afternoon news as Spiegel's only proferred proof of harm. In order to meet this burden plaintiffs need to establish that at the time of the injunction it was under a substantial "... threat of harm which cannot be undone..." through monetary remedies. *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975). Such a threat is the possibility of customers being permanently discouraged from patronizing one's business. The District Court found more potential injury to plaintiff-appellees than merely the downturn of business. It found that appellants' actions tended to discourage patrons from patronizing appellees' businesses. Acting in our capacity as a reviewing court, it was not unreasonable for the District Court to consider that a possibility of being detained at a particular business and having one's name and address taken by the police for an unspecified use would tend to discourage the average person from patronizing that business. This strong discouraging factor could be intensified if it is also possible that one will be filmed and telecast on the afternoon news as being under detention, being questioned by the police. In this light we

---

**2.** The patrons are the only class not represented among named plaintiffs in this case.

are unable to hold the finding that appellees' businesses were under substantial threat of irreparable injury if the injunction wasn't granted to have been an abuse of discretion.

Since this injunction is against public institutions and against public servants charged with the enforcement of the law, we shall consider together the balancing of the equities required by test three and the question of whether the injunction would disserve the public interest, which is test four of the prerequisites for a preliminary injunction.

The preliminary injunction forbids taking patrons' names, addresses or other personal information from them involuntarily. Since the prosecution could give no examples of uses it had made of such information, we cannot say this part of the injunction has resulted in any actual damage to either the named defendants or to the public interest. Where an allegedly obscene motion picture *has not been determined to be obscene by community standards* and is therefore presumptively entitled to First Amendment protections we are left in the position of being unable to say that the public interest is damaged by forbidding the police to shut it down by arresting all the theatre employees.

 Even so, we find considerable *potential* harm to the public interest in the *overly broad* terms of the injunction. The intention of this injunction, apparently, is to eliminate bad faith law enforcement tactics, tactics which harass without adding appreciably to the enforcement of the specific law in question. Such tactics are within the powers of federal courts to enjoin if federally guaranteed Constitutional rights are involved. *Jones v. Wade*, 479 F.2d 1176, 1182 (5th Cir. 1973). However, by its terms the injunction in its overbreadth forbids good faith as well as bad faith law enforcement activities.

Section (1) of the injunction forbids "Enforcing theatre patrons to divulge their names, addresses and other personal information to police officers against their wills." We have no quarrel with the District Court's enjoining the appellants' taking patrons' names for the purpose of discouraging them and future patrons from patronizing appellees' businesses. However, we can envision good faith law enforcement efforts which do require taking information from patrons, perhaps against their will. Section 43.24 of the Texas Penal Code makes it an offense to display "harmful"[3] material to an individual under 17 years old. If a vice officer in good faith thinks a patron of one of appellees' theatres is under 17, we find no federal constitutional impediment to his asking the patron for proof of age. If the state in good faith believes a patron of appellees' theatres is the best witness to call upon in an investigation or at trial to establish a material element in a violation of statute occurring in the theatre we see no federal constitutional bar to its questioning the patron and taking his name and address. Hence, the District Court injunction on this point gives patrons of pornographic theatres a sanctuary from police questioning in the theatre for which we can find no basis in the Constitution.

Section (2) forbids "The physical arrest of theatre employees, when such arrests and removal from the premises would effectively close down the theatres." We have no disagreement with the District Court's injunction of arrests of theatre employees where the sole purpose of the arrests is to harm appellees economically and where there is no significant law enforcement reason for the timing of the arrests. However, we wish to make it plain that unless plaintiffs can demonstrate that law enforcement officers have no significant law enforce-

---

**3.** Section 43.24(a)(2) defines "harmful" material as

material whose dominant theme taken as a whole

(A) appeals to the prurient interest of a minor, in sex, nudity, or excretion;

(B) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and

(C) is utterly without redeeming social value for minors.

ment reason for arresting theatre personnel in the middle of the work day, there is no federal constitutional barrier to such arrests, even if they may tend to close down the theatre.

Plaintiffs argue, citing *Johnson v. Radford*, 449 F.2d 115 (5th Cir. 1971), that even if this injunction is overly broad it can be corrected by the District Court on the hearing for a permanent injunction. This argument was made shortly after the preliminary injunction was issued, when appellant appealed. More than a year later nothing further has happened to change the preliminary injunction. Consideration of the permanent injunction and of the substantive issues has been placed upon the back burner, awaiting the decision of this Court on this interlocutory appeal. Since this injunction is overly broad by its terms, it must be corrected.

The grant of the preliminary injunction is reversed. The temporary injunction is dissolved. The case is remanded to the District Court for such other and further proceedings with reference to a permanent injunction as may be consistent herewith.

REVERSED and REMANDED.