**Michael COHEN, Individually and on behalf of all other persons similarly situated, Plaintiff,**

**v.**

**COAHOMA COUNTY, MISSISSIPPI, and Andrew S. Thompson, Jr., Sheriff, Defendants.**

**No. DC 91–198–B–O.**

United States District Court, N.D. Mississippi, Delta Division.

Sept. 28, 1992.

Charles E. Webster, Clarksdale, Miss., for plaintiff.

David A. Burns, Clarksdale, Miss., for defendant Coahoma County, Miss.

Andrew M.W. Westerfield, Cleveland, Miss., for defendant Sheriff Andrew S. Thompson, Sr.

## ORDER

BIGGERS, District Judge.

Upon consideration of plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction, and the file and records in this action, the court finds that the Report and Recommendations of the United States Magistrate Judge dated August 31, 1992 was on that date duly served by regular mail upon counsel of record for plaintiff Michael Cohen and for defendants; that more than ten days have elapsed since service of said Report and Recommendations; and that no objection thereto has been filed or served by any party. The court is of the opinion that the magistrate judge's Report and Recommendations should be approved and adopted as the opinion of the court. It is, therefore

ORDERED:

1. That the Report and Recommendations of the United States Magistrate Judge dated August 31, 1992 be, and it is hereby, approved and adopted as the opinion of the court.

2. That plaintiff's Motion for Temporary Restraining Order be, and it is hereby, denied as moot.

3. That plaintiff's Motion for Preliminary Injunction, be, and it is hereby, sustained, and that defendants Coahoma County, Mississippi and Andrew S. Thompson, Jr., Sheriff of Coahoma County, their subordinates and those acting in concert with them be, and they are hereby, enjoined, pending entry of final judgment in this action, from inflicting physical pain upon prisoners in the custody of the sheriff for the purpose of coercing information from such prisoners.

4. That plaintiff be, and is hereby, relieved of any duty to post security in connection with the preliminary injunction herein granted.

5. That defendants Coahoma County, Mississippi, and Andrew S. Thompson, Jr., Sheriff of Coahoma County, pay to plaintiff an interim award of his attorney fees and expenses reasonably incurred in obtaining preliminary injunctive relief. The issue of the amount of such attorney fees and expenses is hereby referred to United States Magistrate Judge J. David Orlansky for determination. Within 11 days of this date plaintiff shall serve an itemized affidavit of his said attorney fees and expenses, reasonably incurred by him in obtaining such relief. Defendants may serve any desired responses or counter affidavit within 11 days of the date of service of plaintiff's affidavit. The magistrate judge will thereafter enter an order fixing the amount of the expenses to be paid.

REPORT AND RECOMMENDATIONS

ORLANSKY, United States Magistrate Judge.

By order dated January 10, 1992 in the above entitled action, plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction were referred to the magistrate judge for further consideration and issuance of a report and recommendations. Pursuant to the order of reference, 28 U.S.C. § 636(b)(1)(B) and Local Rule M–4.1(b)(2), the magistrate judge has conducted an evidentiary hearing on plaintiff's said motions at which plaintiff and defendants appeared both in person and by counsel. Following the hearing the parties submitted additional memoranda of authorities.

Upon consideration of the evidence adduced at the hearing, the motion papers, and the arguments of counsel, it is recommended that the court adopt the following as the findings of fact and conclusions of law required by Rule 52, Federal Rules of Civil Procedure; that plaintiff's Motion for Temporary Restraining Order be denied as moot; and that plaintiff's Motion for Preliminary Injunction be sustained.

## I. FACTS.

The material facts are not in substantial dispute. Plaintiff Michael Cohen is an inmate of the Coahoma County Jail at Clarksdale, and, as such, is in the custody of defendant Andrew S. Thompson, Jr., the duly elected Sheriff of Coahoma County. Plaintiff Cohen was also an inmate of the Coahoma County Jail on January 24, 1991. However, he has not been continuously confined in the jail since that date. The record in this action does not make precisely clear when or why plaintiff Cohen left the jail after January 24, 1991, nor when or why his present period of incarceration there began. While the missing information might be of some historical interest for background purposes, it is not essential to resolution of any issue now before the court.

On January 24, 1991 two inmates of the Coahoma County Jail, Alonzo Wilson and Eddie Wilkins, attempted to escape while leaving church services which were conducted in the conference room on the first floor. They attempted to make their escape by breaking through glass doors at the front of the jail, but were seized by officers while the attempt was in progress. Wilson and Wilkins were shackled hand and foot and were then taken into the conference room where church services had been held. They were at that time fully controlled by the officers, and there were no further escape attempts. All of the other inmates were locked in their cells or secured behind locked doors.

When the escape attempt occurred, Sheriff Thompson was not at the jail, but was at the courthouse approximately one block away. When he learned of the escape attempt he immediately went to the jail and found Wilson and Wilkins secured in the conference room. There was at that time no disturbance, and all of the inmates were under control. An investigation of the escape attempt was promptly begun, and it was learned that plans for the escape had involved at least one other inmate and that the escape plan called for the glass front doors of the jail to be broken with a metal bar which the conspiring inmates had secreted somewhere in the jail. However, the bar was not used by Wilson and Wilkins in their abortive attempt.

Sheriff Thompson questioned Wilson and Wilkins in the conference room in an effort to obtain information which might lead officers to weapons and implements, including the metal bar, which had been secreted for use in the planned escape attempt. That interrogation was not productive. Accordingly, Sheriff Thompson obtained a length of coaxial cable approximately three to three and one-half feet long. A length of such cable was received in evidence at the hearing as Exhibit P–3, and is identical in appearance to the cable ordinarily used by cable television systems to transmit their signals. According to Sheriff Thompson he used this length of cable in an attempt to "coerce" Wilson and Wilkins into revealing where the metal bar was secreted and was thereby able to extract from them the information that it was upstairs in the jail. According to Thompson, in the process of "coercing" them he struck Wilson and Wilkins on the buttocks with the cable "a couple of times each."

Unable to learn more from Wilson and Wilkins, Sheriff Thompson had them taken to their third floor cell and there proceeded to interrogate the five occupants of the cell, including Wilson and Wilkins, concerning the location of the metal bar, which by that time Thompson believed to be a brace discovered to be missing from a serving table. Thompson asked the occupants of the cell to surrender the metal bar or brace, but they did not respond. He ordered his deputies to search the cell, and that search produced a steel rod and a length of coaxial cable similar to that which Thompson had used to "coerce" information from Wilson and Wilkins. However, the bar or brace which was the principal object of the search was not found.

Thompson then required the five inmates in the cell to remove all clothing from the lower parts of their bodies, including trousers and underwear, and "applied" the cable to their lower bodies. The only substantial evidentiary dispute centers on the number of blows struck and the severity of those blows. Thompson's testimony was that he "applied" the cable to each of the five inmates "a couple of times each." He also testified that at his direction Deputy Sheriff Tony Smith "applied" the cable to two of the inmates. According to Thompson the force used was not sufficient to injure the inmates or to raise welts. However, the plaintiff, who was housed in another cell on the third floor and was able to hear what was taking place and to see portions of it, was unable to say how many blows were struck, but testified that the whipping of the five inmates lasted from ten to fifteen minutes and that Eddie Wilkins was crying when he was brought to the cell from downstairs. Alonzo Wilson testified that he was struck nine or ten times in the downstairs conference room and was whipped again in the third floor cell, both by Sheriff Thompson and Deputy Smith. He testified that all five of the inmates in the cell were crying after the whipping and that his right hip was bleeding and discolored. A photograph taken the next day, January 25, 1991, and received in evidence as Exhibit P–4, shows raised and discolored areas on Wilson's right hip, which he described as welts and sores caused by the whipping. On January 25, Wilson was seen by the jail doctor, who gave him a lotion to apply to his hip. A preponderance of the evidence establishes that the number of blows struck with the coaxial cable were substantially in excess of the "couple of times each" testified by Sheriff Thompson and that they were deliv-

ered with sufficient force to cause significant pain and visible marks.

The whipping of the five inmates with the coaxial cable led to discovery of the metal bar in the shower of the cell, and to information that a shank, a type of homemade knife, had been passed out of the cell to another inmate. The metal bar was retrieved from the shower, but the shank was never found.

Two excerpts from the Policies and Procedures Manual of the Coahoma County Jail were received in evidence. Exhibit P–1 is a copy of Policy No. 03.01, entitled Discipline and Grievance Procedures—Implementation. Procedure 15 of that policy provides:

"There shall be no beating, striking, whipping or other corporal punishment imposed upon any inmate for major or minor infractions."

Appendix E of that policy identifies "[a]ttempting or planning escape" and "[p]ossession or introduction of a gun, firearm, weapon, sharpened instrument, knife, or unauthorized tool" as major rule infractions which "... may be punishable by placement in a single cell or behavior modification unit; loss of acquired good time; restriction of commissary, TV, phone, contact visitation, school or chapel attendance, outside exercise yard—for up to thirty (30) days—and/or referral to the Prosecutor's Office for prosecution."

Exhibit P–2 is a copy of policy No. 09.07, entitled Security—Use of Physical Force. That policy of the jail is stated as follows:

"Only the amount of physical force necessary to maintain or regain control of an inmate, for preservation of peace, or to prevent a felony or misdemeanor shall be used by the officers at Coahoma County Jail."

Nothing in either policy expressly authorizes the use of force to extract information from an inmate.

Sheriff Thompson testified that he has approximately 17 years experience in law enforcement, 8½ years as a deputy sheriff in Coahoma County. He further testified that this was the only occasion on which he has used such a method to elicit information from an inmate. He also testified that under the same circumstances he would do the same thing again, although it would be as a last resort. He conceded that there are not in effect at the Coahoma County Jail any guidelines as to when an inmate may be whipped, nor governing the number of blows that can be struck. In the opinion of the sheriff, he, the chief deputy, or the jail administrator, have the authority to authorize the use of force, including the use of force to obtain information when it is deemed necessary to jail security. He recognized, however, that it is not appropriate to use force to obtain a confession or to solve a crime. Sheriff Thompson emphasized that he used the cable strictly for the purpose of coercing information concerning the location of the metal bar, which he deemed to be a threat to jail security because of its potential for use as a weapon or a tool for escape. In the opinion of Sheriff Thompson, as long as such an item remained in the jail it constituted a threat to the officers, as well as other inmates. While, in the sheriff's view, the presence of the metal bar in the jail constituted a security emergency which justified his use of force, he admitted that he had in the past received other reports of weapons in the jail and had never resorted to such tactics to obtain information concerning those weapons.

Jim Humber, President of the Coahoma County Board of Supervisors, testified without contradiction that the sheriff has the authority to make day to day decisions concerning the operation of the jail; that the Board has never attempted to make the sheriff answerable to it other than in the budget process; and that the sheriff is virtually autonomous in the operation of the jail. The evidence therefore preponderates that in matters concerning the operation of the jail the sheriff is the policy making authority for Coahoma County.

By his complaint in this action under 42 U.S.C. § 1983 the plaintiff seeks on behalf of himself and a plaintiff class composed of all present and future inmates of the Coahoma County Jail a declaration that the policy and practice of intentionally inflict-

ing pain in order to coerce information from inmates violates their constitutional rights, as well as an injunction prohibiting the continued application, enforcement and use of such a policy.

Plaintiff has moved for a temporary restraining order and a preliminary injunction against defendants Thompson and Coahoma County barring the enforcement and/or application of the policy at issue pending final judgment in this action. Plaintiff contends that he and all other inmates of the Coahoma County Jail suffer under the continuing threat of the immediate infliction of pain as a result of the policy and that he and the other members of the putative class will suffer irreparable harm unless further implementation of the policy is preliminarily enjoined. Defendants oppose the motions, contending that plaintiff has failed to meet the prerequisites for preliminary injunctive relief; that the sheriff's policy is reasonable and necessary to maintain the security of the jail; that it does not constitute an excessive or unreasonable use of force; and that whether or not plaintiff or other members of the putative class are ever exposed to implementation of the policy is entirely within their control and can be avoided by not acting in a way which threatens the security of the jail.

## II. THE LAW.

### (a). Temporary restraining order.

Rule 65(b), Federal Rules of Civil Procedure, authorizes the granting of a temporary restraining order without notice if

"(1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be

required." Rule 65(b), Federal Rules of Civil Procedure.

Here, notice has been given to the defendants and a hearing has been held on plaintiff's companion motion seeking a preliminary injunction. Since the purpose of the temporary restraining order is merely to preserve the status quo until a motion for preliminary injunction can be heard, 7–Pt. 2, Moore, *Federal Practice (2d Ed.)*, ¶ 65.-05, p. 65–101, further consideration of plaintiff's motion for a temporary restraining order is unnecessary at this time, and it should be denied as moot.

### (b). Preliminary injunction.

The four part test by which motions for preliminary injunctive relief must be measured is a well established one. In *Canal Authority of Florida v. Callaway*, 489 F.2d 567 (5 Cir.1974), the Fifth Circuit enumerated what it termed "the four prerequisites for the extraordinary relief of preliminary injunction." *Id.*, at 572. They are: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threat and injury to plaintiff outweighs the threat and harm the injunction may do to defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Id.* Furthermore, preliminary injunctive relief is "... not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites." *Id.*, at 576. The *Canal Authority* prerequisites have been reiterated by the Fifth Circuit in many later cases, some of which are cited in the briefs of the parties.

### 1. Substantial Likelihood of Success on the Merits.

Official coercion by fear of physical abuse, *i.e.* torture,[1] has long been recognized as a denial of due process. *See, e.g. Adamson v. California*, 332 U.S. 46, 54, 67 S.Ct. 1672, 1676–1677, 91 L.Ed. 1903

---

1. "Torture" is defined as "[t]he infliction of severe physical pain as a means of punishment or coercion." *The American Heritage Dictionary of the English Language*, New College Ed. (Houghton Miflin 1976), p. 1356.

(1947); *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). Indeed, any physical violence against one being interrogated who poses no threat to the safety of the officers or others is a constitutional violation. *Ware v. Reed*, 709 F.2d 345, 351 (5 Cir.1983); *Gray v. Spillman*, 925 F.2d 90, 93 (4 Cir.1991). While it is true that physical force may be used by prison officials to restore or preserve order, *Whitley v. Albers*, 475 U.S. 312, 320, 326, 106 S.Ct. 1078, 1084–1085, 1087–1088, 89 L.Ed.2d 251 (1986), that is not the case before this court, and even that prerogative is not unlimited. The amount of force required to effect the purpose must be weighed against the risk of injury to inmates. *Hudson v. McMillian*, — U.S. —, —, 112 S.Ct. 995, 998–999, 117 L.Ed.2d 156 (1992).

The undisputed proof is that by the time Sheriff Thompson decided upon the use of the coaxial cable as a means of "coercing" information from inmates of his jail, there was no longer an escape attempt in progress; the perpetrators of the attempted escape were securely in custody, shackled hand and foot; all other inmates of the jail were either locked in their cells or otherwise behind locked doors; there was no ongoing disturbance of any kind; and the two prisoners who had attempted to escape, though not responsive enough to satisfy the sheriff, were quietly submitting to interrogation. Defendants do not contend otherwise. Their argument is that because the metal bar had not yet been found it was still available to inmates for use either as a weapon or as a tool of escape, thus endangering the security of the jail. They further argue that, based on that consideration of security, the sheriff was, and will be in future similar circumstances, authorized to use reasonable force to coerce from inmates information leading to the discovery of such security related contraband. As the decisions in *Ware v. Reed*,

*supra*, and *Gray v. Spillman, supra*, make clear, that position is untenable.

In *Ware* the Fifth Circuit expressly rejected the contention that the right of prison officials to use reasonable force to subdue a belligerent inmate or prevent an escape justifies the use of force during interrogation. " 'There is no occasion for the use of any force against a prisoner who quietly submits.' " 709 F.2d, at 351 [quoting from *Feemster v. Dehntjer*, 661 F.2d 87, 89 (8 Cir.1981) ]. The Court of Appeals for the Fourth Circuit, citing *Ware*, stated the controlling principle succinctly in *Gray v. Spillman, supra*.

> "Here, rather than being beaten for no legitimate reason, Gray alleges that he was beaten for an absolutely impermissible reason: to coerce an incriminating statement. It has long been held that beating and threatening a person in the course of custodial interrogation violates the fifth and fourteenth amendments of the Constitution." 925 F.2d, at 93.

Thus, the use of force to coerce information from a prisoner is constitutionally impermissible, regardless of the objectives of the interrogation.[2]

This is not to suggest that the sheriff and his subordinates were not justified in using all appropriate means to discover and seize the metal bar, the shank, and any other contraband in the jail. It simply means that the Constitution does not accept the whipping of inmates in order to extract information concerning the location of contraband as an appropriate means. Other means were available to the sheriff to pursue his investigation. Continued nonviolent interrogation of inmates and a painstaking search of the jail by officers are two which come most readily to mind. Even if such nonviolent methods are perceived as potentially less effective than the method employed by the sheriff, it must be repeated that the use of force to extract information from a prisoner is prohibited by the Constitution.

---

**2.** This makes it unnecessary for the court to consider defendants' argument that no constitutional rights were violated by the whipping of the inmates because no significant injuries resulted. Even if that were not so, the argument

has been disposed of by the decision of the Supreme Court in *Hudson v. McMillian, supra*, in which the court held that proof of a significant injury is not essential to a claim of excessive force.

That does not end the court's inquiry, however, because the plaintiff, while he witnessed some of the whippings, was not himself subjected to such treatment. The likelihood of his success on the merits depends upon his standing to enjoin the practice or policy here at issue. Not every citizen has the right to enjoin a policy or practice of a public official claimed to be unconstitutional. There must be a showing that there is a real or immediate threat that the plaintiff will be subject to the conduct which he seeks to enjoin. *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983); *Gladden v. Roach,* 864 F.2d 1196, 1198 (5 Cir.1989).

Here, even though the plaintiff is an inmate of the Coahoma County Jail, he has not personally been subjected to the practice or policy in question, nor is there evidence of an individualized threat to subject plaintiff to it. Plaintiff's position is that there is a real danger that he may be subject to the practice or policy because the sheriff could at any time perceive the existence of a danger to jail security and could also decide that plaintiff, or any other inmate of the jail, has information which, if made available to the sheriff, would enable him to bring an end to the perceived threat to institutional security. It is further the plaintiff's contention that, since the sheriff has testified that he would again use force to "coerce" information from inmates as a last resort in order to eliminate a threat to jail security, a real danger exists that he may be the next victim of the sheriff's practice or policy.

The requirement that a plaintiff seeking injunctive relief establish the existence of a real or immediate danger that he will be subject to the conduct sought to be enjoined does not mean that the plaintiff must show that the defendant is presently engaging in such conduct, or that he will, unless enjoined, engage in it within any fixed period of time. It is sufficient if the plaintiff can show that there is "a genuine threat of enforcement" of the practice sought to be enjoined, *City of Houston v. Hill,* 482 U.S. 451, 459, n. 7, 107 S.Ct. 2502, 2508, n. 7, 96 L.Ed.2d 398 (1987); "that there exists some cognizable danger of recurrent violation," *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953); *Walls v. Mississippi State Department of Public Welfare,* 730 F.2d 306, 325 (5 Cir.1984). There must be more than a "mere possibility" that the conduct will occur. *United States v. W.T. Grant Co.,* supra; Walls v. Mississippi State Department of Public Welfare, supra.

What takes this case out of the "mere possibility" category is Sheriff Thompson's testimony that he believes he has the right to use force to extract information from inmates in order to protect the security of the jail and that, if again confronted with circumstances such as those which existed on January 24, 1991, he would again use force to attempt to "coerce" information from inmates. In *Walls* the Fifth Circuit held that it was an abuse of judicial discretion for the district court to enjoin the use of invalidated written examinations as a mandatory selective device for public welfare department employees where there was a showing that the mandatory requirement had been abandoned and there was no evidence of any threat of a recurrence of the practice. 730 F.2d, at 325. Here, the uncontradicted evidence is that, far from abandoning the practice or policy of using force to "coerce" information from inmates, the sheriff insists that he has the right to do so and asserts that in circumstances which he deems appropriate he will do so again. It is therefore clear that the policy or practice has not been abandoned and that there is a genuine threat that it will be employed in the future.

The threat is especially real for plaintiff where, as here, the sheriff admits that there are no standards, rules, or regulations which purport to spell out the circumstances under which force will be used to extract information from inmates, no limits on the number of blows which may be struck, and nothing to guide inmates as to what conduct on their part may lead to the use of such force. It is therefore impossi-

ble for the plaintiff or anyone else to know when such force may be employed or how it can be avoided. The defendants' argument that the plaintiff and other inmates can avoid the use of such force by refraining from conduct which imperils jail security is disingenuous. The evidence shows that not all of the five inmates who were whipped with the coaxial cable on January 24, 1991 were known to have participated in the planning of the escape attempt. It appears that only three of them were. Thus, it seems to be sufficient under the sheriff's practice or policy that the sheriff believes an inmate has information affecting the security of the jail. Such an inmate is at risk of the employment of force to "coerce" such information from him, whether or not he has himself been guilty of prohibited conduct. Accordingly, an inmate bystander who has engaged in no activity threatening the security of the jail is subject to being whipped by the sheriff if, upon questioning, the inmate is unwilling, or unable, to tell the sheriff what he wants to know. Under those circumstances there is a genuine and cognizable threat that the plaintiff, as an inmate of the Coahoma County Jail, will be subjected to the sheriff's practice or policy of using force to coerce information from inmates.

The fact that the sheriff has never engaged in such conduct except on January 24, 1991 is of little weight when he says under oath that under the same circumstances he would again use force to coerce information from prisoners. Threats, real or perceived, to jail security are not uncommon and there is therefore no way to predict when circumstances may arise which will again lead the sheriff to act in a similar fashion. There is therefore a real danger that the plaintiff will be subjected to the conduct which he seeks to enjoin.

It is argued by the county that there is no likelihood of plaintiff's success on the merits of his claims against the county because no policy or practice of using physical force to coerce information from prisoners has been adopted or ratified by the county. County Brief, p. 7. That argument must be rejected because the evidence establishes that in matters of jail operation the sheriff establishes the policy of Coahoma County without formal adoption, approval or ratification by the Board of Supervisors. The sheriff's acts are the acts of the county insofar as the operation of the jail is concerned. *Turner v. Upton County, Tex.*, 915 F.2d 133 (5 Cir.1990).

Plaintiff has satisfied the prerequisite that he show the existence of a substantial likelihood that he will prevail on the merits.

### 2. Substantial Threat of Irreparable Injury.

The second prerequisite for obtaining preliminary injunctive relief is that the plaintiff show the existence of a substantial threat that he will suffer irreparable injury if the injunction is not granted. *Canal Authority of State of Florida v. Callaway, supra,* at 572. The substantiality of the threat has been fully discussed at pp. 405–406, *supra.* Since there is a substantial threat that plaintiff will suffer harm as a result of the policy or practice sought to be enjoined, it is necessary to consider whether or not the threatened harm is irreparable.

The use of force to coerce information from a prisoner is a clear violation of the prisoner's due process rights. *See,* pp. 403–404, *supra.* It has repeatedly been recognized by the federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law. *Elrod v. Burns,* 427 U.S. 347, 373–374, 96 S.Ct. 2673, 2689–2690, 49 L.Ed.2d 547 (1976); *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 338 (5 Cir.1981); *Ross v. Meese,* 818 F.2d 1132, 1135 (4 Cir.1987); *Milwaukee County Pavers Assn. v. Fiedler,* 707 F.Supp. 1016, 1031–1032 (WD Wis.1989); *Albro v. County of Onondaga, New York,* 627 F.Supp. 1280, 1287 (ND N.Y.1986); *Walters v. Thompson,* 615 F.Supp. 330, 341 (ND Ill. 1985). *Cf. United States v. Hayes International Corp.,* 415 F.2d 1038, 1045 (5 Cir.1969).

The court therefore need not undertake the task of determining whether or not any injuries with which plaintiff is threatened

can be adequately compensated by way of a money judgment. Nevertheless, it is worth noting that even though any pain or physical injury which plaintiff might suffer as a result of application of the sheriff's practice or policy to him could be the basis for an award of money damages, more is at stake here. The practice of using physical force to coerce information from prisoners is reminiscent of the Star Chamber and the Inquisition. Such a practice is so foreign to the basic principles of our constitutional form of government that, if it can be prevented, no citizen should be required to endure it.

Plaintiff has therefore established the existence of a substantial threat of irreparable harm unless the preliminary injunction is granted.

### 3. Balance of Harm.

The third (the threat and injury to plaintiff outweighs the threat and harm to defendant) and fourth (the preliminary injunction will not disserve the public interest) prerequisites normally address separate concerns and thus must ordinarily be considered separately. However, where preliminary injunctive relief is sought "... against public institutions and against public servants charged with the enforcement of the law ...," *Spiegel v. City of Houston*, 636 F.2d 997, 1002 (5 Cir.1981), it is proper for the court to consider them together. *Id.* Here, the injunction is sought both against Coahoma County, a public institution, and against Sheriff Thompson, a public servant charged with the enforcement of the law. In those circumstances, as was the case in *Spiegel*, the defendants represent public interests, and, as to them, the third and fourth prerequisites become one.

The threat of harm to the plaintiff if the injunction is not granted is that he will suffer pain and perhaps physical injury if the sheriff's policy or practice is applied to him, and that in the absence of an injunction he will suffer anxiety that he may at any time be subject to the use of force by the sheriff or his deputies in order to coerce information from him. Further-

more, since he has a clear due process right to be free from such coercion, there is also the threat that this fundamental right will be violated. As is evident from the legal presumption that violation of constitutional rights causes irreparable harm, such considerations weigh very heavily in the balancing process.

Defendant sheriff argues that there is no actual or potential harm to plaintiff, a position which must be rejected. *See*, pp. 406–407, *supra*. Both the sheriff and the county also contend that the granting of a preliminary injunction would be unfairly prejudicial to them in the trial on the merits of this and related actions because it would unfairly "brand" them as perpetrators of unconstitutional conduct. The point is not well taken. Defendants have cited no authority for the proposition that preliminary injunctive relief should be denied because of its "branding" effect upon the defendants where the *Canal Authority* prerequisites are met. On the other hand, if defendants' argument is viewed as a contention that this alleged "branding" effect is an element of harm to defendants which must be weighed against any benefits to plaintiff from the granting of an injunction, it is still not well taken. Although Rule 65(a)(2), Federal Rules of Civil Procedure, authorizes the advancement and consolidation of the trial on the merits with the hearing on a motion for preliminary injunction, that has not occurred in this case. Thus, the granting of preliminary injunctive relief to plaintiff will not constitute an adjudication that the defendants are perpetrators of constitutional violations. At most, it constitutes a determination that there is a substantial likelihood that plaintiff will succeed on the merits of his claims. *See*, pp. 403–406, *supra*. Since the granting of a preliminary injunction does not constitute an adjudication of plaintiff's claims, there is no "branding" effect which will unfairly prejudice defendants in later stages of this or any other litigation.

Plaintiff contends that the public has an interest in preventing its officials from engaging in unconstitutional conduct. On the other hand, the county argues that the

public also has a strong interest in maintaining order and security in the jail and in protecting both inmates and officers. The county argues that this interest will be disserved by issuance of the injunction because it will deprive officials of the ability to use "a certain degree of reasonable physical force," County Brief, p. 9, to restore order and maintain security. The public does indeed have a strong interest in assuring that constitutional rights of citizens are respected and also has a strong interest in maintaining order and security in the Coahoma County Jail. The granting of a preliminary injunction prohibiting the use of physical pain to coerce information from prisoners will serve the former interests and will not disserve the latter. The sheriff will not be deprived of the right to use reasonable force to maintain order and security. He will not be deprived of the right to thoroughly investigate threats to jail security. He will merely be deprived of a single investigative tool—the infliction of physical pain to coerce information from prisoners. The loss of that single investigative tool (one which the constitution clearly forbids) does not remotely approach the weight of the public's interest in the vindication of constitutional rights and the proper and lawful administration of the jail. It is overwhelmingly outweighed by the threat of harm to the plaintiff if the injunction is not issued.

Plaintiff has therefore carried his burden of persuasion on all of the four *Canal Authority* prerequisites.

### (c) Security.

▆ Rule 65(c), Federal Rules of Civil Procedure, provides that no preliminary injunction shall issue "... except upon the giving of security by the applicant, in such sum as the Court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party ..." if the injunction is later determined to have been wrongfully issued. In determining the proper amount of security the court "... may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5 Cir.1978). In this case it is unlikely that either the

county or the sheriff will incur any significant costs or any damages as a result of the preliminary injunction, and the court should therefore exercise its discretion to require no security.

### (d). Interim Attorney Fees.

▆ A "prevailing party" in an action brought under 42 U.S.C. § 1983 is entitled to recover his reasonable attorney fees and expenses from the opposing parties. 42 U.S.C. § 1988. A party who succeeds in obtaining preliminary injunctive relief is a "prevailing party" within the meaning of § 1988. *Deerfield Medical Center v. City of Deerfield Beach, supra,* at 339. In the absence of special circumstances making an award of such interim fees and expenses unjust, such a prevailing party is entitled to an interim award. *Deerfield Medical Center v. City of Deerfield Beach, supra.* Defendants have not suggested the existence of any such special circumstances, and none are apparent. Accordingly, if plaintiff is granted the preliminary injunction which he seeks, he is also entitled to an interim award of attorney fees and expenses.

It is therefore recommended as follows:

1. That plaintiff's Motion for Temporary Restraining Order be denied as moot.

2. That plaintiff's Motion for Preliminary Injunction be sustained, and that defendants Coahoma County, Mississippi and Andrew S. Thompson, Jr., Sheriff of Coahoma County, their subordinates and those acting in concert with them be enjoined, pending entry of final judgment in this action, from inflicting physical pain upon prisoners in the custody of the sheriff for the purpose of coercing information from such prisoners.

3. That plaintiff not be required to post security in connection with the granting of the preliminary injunction.

4. That plaintiff receive an interim award of his attorney fees and expenses reasonably incurred in obtaining preliminary injunctive relief.

The parties are referred to Local Rule M–3(a) for the applicable procedure in the

event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within ten days of this date. Failure to timely file written objections to the proposed findings and recommendations contained in this report will bar an aggrieved party from attacking such findings and recommendations on appeal. *Nettles v. Wainwright*, 677 F.2d 404 (5 Cir.1982).

Respectfully submitted, this the 31st day of August, 1992.