STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-17-0084

SUPREME XTRACT, LLC,

               Plaintiff

v.

COREY LaPLANTE and
DANIEL PELLETIER

               Defendants

**TEMPORARY RESTRAINING
ORDER**

Supreme Xtract, LLC brings this action against Defendants Corey LaPlante and Daniel Pelletier alleging violation of a confidentiality and non-competition agreement.[1] The complaint seeks both monetary damages and injunctive relief. Plaintiff filed with the complaint a motion for a temporary restraining order and preliminary injunction pursuant to M.R. Civ. P. 65 along with a supporting affidavit and memorandum. Plaintiff did not request the issuance of an *ex parte* restraining order. Defendants have been served with the complaint and motion, and have timely filed responsive pleadings, oppositions to the motion, and supporting affidavits and memoranda.

The affidavits filed by the parties comprise the factual record on which the court is considering the motion, and the court held a non-testimonial hearing on May 5, 2017 to address issues of law. Alan E. Shepard, Esq., representing Plaintiff, appeared, as did Plaintiff's owner, Jaime Crumb. Tammie Snow, Esq., appeared for Defendant Corey

---

[1] A third defendant originally named in the complaint has been dismissed with prejudice pursuant to M.R. Civ. P. 41(a)(1).

1

LaPlante.  Ken Hovermale, Esq. appeared by telephone with prior permission for Defendant Daniel Pelletier.

Consideration of preliminary injunctive relief requires "a balancing of the effect of a grant of the injunction *pendent lite* upon the defendant against the effect of a denial upon the plaintiff and consideration of their relative chances of ultimate success" and other factors.  3 C. Harvey, *Maine Civil Practice* § 65:4, 333-34 (3rd ed. 2011).  The court reviews the application under the standards set out in Rule 65 and *Ingraham v. University of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982).[2]

A party seeking temporary injunctive relief must first demonstrate that "immediate and irreparable injury, damage or loss will result" if the relief is not granted.  M.R. Civ. P. 65(a); *see also Town of Charleston v. Sch. Admin. Dist. No. 68,* 2002 ME 95, ¶ 6, 798 A.2d 1102; *Ingraham,* 441 A.2d 693.  "Irreparable injury" is injury for which there is no adequate legal remedy through an award of monetary damages. *Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Resources,* 2003 ME 104, ¶ 10, 837 A.2d 129.  Economic harm is generally not considered sufficient to constitute irreparable injury, and an alleged injury must be more than merely speculative. *OfficeMax Inc. v. Qwick Print, Inc.,* 709 F.Supp.2d 100, 113 (D. Me. 2010).

One form of potential economic injury, however, may constitute irreparable harm for purposes of granting injunctive relief.  A business's interest in good will, customer contacts, and referral sources "cannot be measured in numerical or monetary terms."  *Everett J. Prescott, Inc. v. Ross,* 383 F.Supp.2d 180, 1191 (D. Me. 2005) *quoting SizeWise Rentals, Inc. v. Mediq/PRN Life Support Servs.,* 87 F.Supp.2d 1194, 1200 (D. Kan.

---

[2] The party requesting injunctive relief must show the potential for irreparable harm and a likelihood of success on the merits of the claim; and in addition, that this harm is not outweighed by potential injury to the other party and the public interest will not be adversely affected.  *Ingraham,* 441 A.2d 693.

2000), *aff'd*, 216 F.3d 1088 (10th Cir. 2000); *see also OfficeMax Inc. v. Qwick Print, Inc.,* 751 F.Supp.2d 221, 248 (D. Me. 2010) (loss of customer good will, an "immeasurable quantity," can constitute irreparable harm), *rev'd on other grounds, OfficeMax, Inc. v. Levesque,* 658 F.3d 94 (1st Cir. 2011). In other words, it may be "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Id., quoting Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 69 (2nd Cir. 1999); *Ferraro v. Associated Materials Inc.,* 923 F.2d 1441, 1449 (11th Cir. 1991); *Medtronic, Inc. v. Gibbons,* 684 F.2d 565, 569 (8th Cir. 1982); *Spiegel v. City of Houston,* 636 F.2d 997, 1001-02 (5th Cir. Unit A Feb. 1981).

Jaime Crumb is the sole member and owner of Plaintiff Supreme Xtract, LLC, which is in the business of extracting and distilling cannabis oil from plant material, then selling the oil in vaporized cartridges. Affidavit of Jaime Crumb (Crumb Aff.), ¶¶ 1, 2, 11, 13. Plaintiff claims to be one of the first businesses in Maine to successfully produce solvent-free extraction techniques for cannabis oil, and also claims to have developed a proprietary distillation process to create a clear extract of the THC by-product of cannabis for use in cartridges. *Id.,* ¶¶ 9, 11-12. For purposes of this motion, the interest Plaintiff seeks to protect is use of that specific distillation process in conjunction with the manufacture and sale of the vaporized cartridges.

Defendants LaPlante and Pelletier worked for Plaintiff until earlier this year. They signed a confidentiality and non-compete agreement. Crumb Aff., ¶¶ 3-6. The agreement provides that each Defendant "covenants and agrees with [sic] that they shall not work in any related manufacturing field of work related to [Plaintiff's] manufacturing process for a period of three (3) years from the date of any ending of employment with [Plaintiff]." Complaint, Ex. A, ¶ 6.

3

Soon after ending his relationship with Plaintiff, Defendant Pelletier, using the name, "Dan Ex Supreme," texted one of Plaintiff's clients and said:

> Haha I am not with supreme anymore. Haven't been since back in middle January. It would be me Corey Matt and Janelle. I am helping out make edibles now over at tastefully baked. The 4 of us are running the show over here now. No Jaime. So please keep this between you and i. Were [sic] looking for facilities and have to meet in Portland Monday at 10. We were thinking if possible to swing by you guys and say hello."

*Id.*, ¶ 17, *referencing* Complaint, Ex. D.

An Instagram posting by "codeman207" shows what is represented as a vaporized cartridge of cannabis oil with the following exchange:

> **Codeman207** Due to an auto-immune disease a family member of mine has lots of respiratory issues and has been having lots of problems with both flower and concentrates as well as edibles due to pancreas problems. These cartridges from @tastefullybaked are an absolute life saver for this nausea, thank you so much guys! . . . .
> **Tastefullybaked** So happy we can help! Glad to hear it's helping the nausea [smiling emoticon]

*Id.*, ¶ 18, *referencing* Complaint, Ex. E.

An Instagram posting of **greentruckextracts** (one of Plaintiff's customers) shows a photograph of various products, including cartridges of the type produced and sold by Plaintiff, and states:

> **greentruckextracts** Big thanks to the homies @tastefullybaked for always hooking it up when they visit the shop. Go give them a follow and check out the killer work they are putting out [multiple emoticons]

*Id.*, ¶ 19, *referencing* Complaint, Ex. F.

Defendant LaPlante, in his LinkedIn profile, lists immediately below his name and photograph: "Tastefullybaked.com Maine's original Craft-cannabis processors."

*Id.*, ¶ 20, *referencing* Complaint, Ex. G. The LinkedIn profile further states:

> Tastefullybaked.com
> Commercial Cannabis cultivation and extraction expert with 10 years industry experience, specializing in high-thruput [sic] solvent

4

free formulations for cultivators and dispensaries and investors worldwide.

*Id.* He lists among his experiences:

> co-founder, R&R manager
> SupremeXtracts
> February 2016 – February 2017 (1 year 1 month)
>
> Co2 extraction, fractional distillation, and terpene specialists serving growers, patients, caregivers and dispensary's nationwide.

*Id.*

The foregoing clearly suggests that Defendant LaPlante and Defendant Pelletier, through Tastefully Baked (where "[we] are running the show over here now. No Jaime."), are directly engaged in a "related manufacturing field of work related to [Plaintiff's] manufacturing process," which Plaintiff asserts is proprietary, in whole or part; and further are reaching out directly to others, including Plaintiff's customers, in connection with the very same product. This is a sufficient demonstration of the potential for "irreparable harm" as it is recognized in the case law cited above for purposes of the instant motion.

It is also sufficient for present purposes as a demonstration of a likelihood of success on the merits of Plaintiff's claim. At this stage, the showing of likelihood of success need only be "at most, a probability; at least, a substantial possibility." *Ingraham,* 441 A.2d 693. Non-competition agreements are enforceable so long as they are reasonable; and the reasonableness of a specific covenant is determined on a case-by-case basis taking into account its duration, geographic area and the interests sought to be protected. *See Brignull v. Albert,* 666 A.2d 82, 84 (Me. 1995); *Chapman & Drake v. Harrington,* 545 A.2d 645, 647 (Me. 1988). The reasonableness of the agreement may be assessed on an "as-applied" basis. *Brignull,* 666 A.2d 84 (optometrist's non-compete

agreement with a four-year duration and specified geographic scope held to be enforceable when defendant opened new practice 16 months later and two miles away).

For purposes of this motion, Plaintiff is not seeking to bar Defendants from employing the same extraction or distillation processes generally, or even from using the distillation process it contends is proprietary for all other uses, including use in baked goods. Nor does this motion seek to enjoin any other individual or entity. The relief requested focuses more narrowly on Defendants' use of the distillation process, or key elements thereof, learned at Xtract Supreme LLC to produce cannabis oil for use in a vaporized cartridge; as well as contacting Plaintiff's current and former customers for the purpose of marketing or selling said cartridges.

In view of the limited scope of enforcement sought at this point, the court further concludes that the "balance of harms" and "public interest" prongs of the *Ingraham* standard do not foreclose the relief that Plaintiff is seeking.

Defendants vigorously contest a number of the facts and contentions asserted in support of this motion. They dispute, for example, (i) that the processes in question are proprietary; (ii) that they were, in fact, employed by Plaintiff; (iii) that they are employed by Tastefully Baked; and (iv) that they are engaged in a "related manufacturing field of work" within the meaning of the agreements. They contend that the agreements are invalid and/or unenforceable.[3] The factual assertions require

---

[3] Defendants also contend that Jaime Crumb had no specialized knowledge in this industry prior to working with LaPlante in December 2015; disagree that LaPlante had no prior knowledge and experience in this field before working for Plaintiff; claim that Plaintiff only gave them minimal training; and assert that Crumb was aware of LaPlante's affiliation and work with Tastefully Baked (owned by LaPlante's wife). *See* Affidavit of Corey LaPlante, ¶¶ 6, 8, 9, 11, 12, 13; Affidavit of Daniel Pelletier, ¶¶ 5, 8, 11, 12, 15. Defendants, however, did sign the confidentiality and non-compete agreement specifying that they "shall not work in any related manufacturing field of work related to [Plaintiff's] manufacturing process" for a period of three years.

6

a more developed record to address fully, and an evidentiary hearing will be necessary. In the interim, however, limited injunctive relief is warranted.

Rule 65(c) requires posting of security. It states:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to be wrongfully enjoined or restrained.

M.R. Civ. P. 65(c). The court may waive this requirement upon request and a showing of good cause. *Id.* Plaintiff has not requested a waiver of security nor demonstrated good cause. Plaintiff will be ordered to give security as a condition of this order.

Finally, this order is binding only on the parties to this action, and not upon any other individual or entity not a party to this action. *See* M.R. Civ. P. 65(d).

Accordingly, it is hereby ORDERED as follows:

1. Plaintiff's motion for a temporary restraining order is hereby GRANTED as follows.

2. Defendants Corey LaPlante and Daniel Pelletier are hereby temporarily ENJOINED from (1) using the proprietary distillation process, or key elements thereof, learned at Xtract Supreme LLC to produce cannabis oil for use in a vaporized cartridge; and (2) contacting Plaintiff's current or former customers for the purpose of marketing or selling said cartridges.

3. As a condition of this order, Plaintiff shall give security in the form of a surety bond in the amount of $50,000, and file proof with the clerk within 14 days with copies to the parties. Unless ordered otherwise, failure to do so will result in this order being vacated *sua sponte*.

4. The clerk shall set this matter for a testimonial preliminary injunction hearing on the earliest available date, to be preceded by a telephonic pre-trial conference of counsel.

The clerk may incorporate this order by reference on the docket pursuant to M.R. Civ. P. 79(a).

**SO ORDERED.**

DATE:    May 9, 2017

_____
Wayne R. Douglas
Justice, Maine Superior Court

8

CV-17-84

ATTORNEY FOR PLAINTIFF:
ALAN SHEPARD
SHEPARD & READ
93 MAIN STREET
KENNEBUNK ME  04043

ATTORNEY FOR DEFENDANT DANIEL PELLETIER
KENNETH HOVERMALE
LAW OFFICE OF KENNETH HOVERMALE JR
P O BOX 578
PORTLAND ME  04112

ATTORNEY FOR DEFENDANT COREY LAPLANTE:
TAMMIE L SNOW
LAW OFFICE OF TAMMIE L SNOW
136 COMMERCIAL STREET
MEZZANINE LEVEL
PORTLAND ME  04101